## MISSOURI VALLEY BRIDGE & IRON COMPANY ET AL. V. HARRY BALLARD.

### Decided January 2, 1909.

**1.—Trial—Hearing Demurrers—Practice.**

Where appellants were afforded an opportunity to present their demurrers and have the same acted upon but failed to do so until the parties had announced ready for trial and had begun testing the jurors as to their qualifications, the refusal of the trial court to suspend the proceedings and hear the demurrers was not an abuse of its discretion.

**2.—Damages—Independent Contractor—Liability of Employer.**

It is a general rule that the employer is not liable for injuries to others resulting wholly from the default of an independent contractor or his employes, but to this rule there are exceptions, as, for instance, where the work is intrinsically dangerous and the injuries received are the direct result of the very thing which the employer authorized to be done. In such case he cannot escape liability by farming out the work to an independent contractor; but where the injury is the result of an act or fault purely collateral to the work to be done, and is the result entirely of the wrongful act of the independent contractor or his workmen, the employer should not be held liable. This rule applied in the case of a bridge company employed as an independent contractor to build a bridge for a railroad company.

**3.—Negligence—Pleading—Special Allegations.**

General allegations of negligence are made definite by special allegations of the facts constituting the negligence, and in such case the evidence should be confined to the particular facts or acts alleged. A general allegation in a petition that it is the duty of defendant to furnish plaintiff with a safe place, means and method of performing the work, which it negligently failed to do, followed by specific allegations of the particulars wherein defendant was negligent, will not admit evidence of other acts of negligence than those specified.

**4.—Personal Injury—Caisson Work—Paralysis.**

In a suit for damages resulting from paralysis caused by working in a bridge caisson, evidence considered, and held sufficient to support the verdict

of the jury finding the bridge company negligent in failing to furnish plaintiff with proper protection against such injuries.

### 5.—Evidence—Hypothetical Question.

A hypothetical question which has no basis in the evidence then before the jury is properly excluded. That evidence justifying the question was subsequently introduced cannot affect the matter when the question was not thereafter repeated.

### 6.—Practice—Admission of Evidence—Harmless Error.

The admission of improper evidence is rendered harmless by express instruction of the court to disregard the same.

### 7.—Agency—Proof—Declarations of Agent.

Error in admitting the declarations of a witness as proof of his agency is harmless when there is other competent testimony to the same effect.

### 8.—Evidence—Life Expectancy.

Mortality tables are not indispensable in proving life expectancy. This is a matter the jury might determine for themselves in view of plaintiff's age and injuries.

Appeal from the District Court of Hemphill County. Tried below before Hon. H. G. Hendricks.

*Shirley M. Crawford, Terry, Cavin & Mills* and *Hoover & Taylor,* for appellants.—The proof of acts of negligence must be confined to the acts of negligence alleged. The admission of evidence of other acts of negligence upon which the jury might predicate a verdict of negligence against defendants is error. The plaintiff having specifically alleged certain acts of negligence upon which he based his right of recovery, it was error to admit evidence over the objections of defendants that the "sand hog house" was not properly and conveniently located for the best safety of the men at work. Keeble v. Black, 4 Texas, 71; Moore v. Kennedy, 81 Texas, 147; Lumber Co. v. Denham, 85 Texas, 60.

It was error for the court to submit to the jury an issue of negligence upon which they were at liberty to find for plaintiff not raised by the pleadings; the rule of law requires the trial court to submit to the jury only such issues as are properly raised by the pleadings and sufficiently supported by the evidence to become a question of inquiry on the part of the jury. Houston & T. C. Ry. Co. v. Terry, 42 Texas, 451; Texas & P. Ry. Co. v. French, 86 Texas, 98; Southern Kansas Ry. Co. v. Sage, 84 S. W., 814, and cases there cited.

The tenth paragraph is obviously upon the weight of the evidence and places a greater burden upon defendants than required by law, in that it charges, in effect and by implication, that it was the duty of defendants to provide a sand hog house as an avoidance of the hazards of said work, and to place it as proximately and conveniently as the same can be situated to carry on the caisson work; the full measure of defendants' duty, in so far as the issues in this case are concerned, was to use ordinary care to furnish a reasonably safe place, and if a sand hog house was to be furnished under such duty to use ordinary care as to its location with reference to the caisson. Galveston, H. & S. A. Ry. v. English, 59 S. W., 626, and cases cited.

Where illegal and improper testimony had been admitted over the proper objections made by defendants, it was error to refuse a special written charge requested by defendants specifically directing the jury not to consider it. McCauley v. Long, 61 Texas, 74; Texas & P. Ry. Co. v. Boggs, 30 S. W., 1090; Smith v. Caswell, 4 S. W., 853.

When a servant enters the employment of the master he thereby assumes the risks ordinarily incident thereto, and the master has the right to assume that he has the capacity to understand the nature and extent of the services, and the ability to perform them. This is a presumption the law gives the master the right to indulge in, and it is the duty of the court to so charge the jury. Missouri Pac. R. R. Co. v. Callbreath, 66 Texas, 526; Galveston, H. & S. A. R. R. Co. v. Hughes, 54 S. W., 266; Gulf, C. & S. F. R. R. Co. v. Kizziah, 86 Texas, 90.

*Veale, Hazlewood & Underwood* and *Baker, Willis & Willis,* for appellee.

SPEER, ASSOCIATE JUSTICE.—Harry Ballard sued the Missouri Valley Bridge & Iron Company and the Southern Kansas Railway Company of Texas and recovered a judgment for ten thousand dollars damages for injuries received while in the employ of said companies, resulting in what is known as caisson paralysis. Inasmuch as many of the errors assigned are predicated upon the court's charge, it is here set out:

"First: 'Ordinary care' is that degree of care that an ordinarily prudent person would exercise under the same or similar circumstances.

"Second: 'Negligence,' as the term is used in this charge, is the failure of a person to exercise ordinary care.

"Third: You are instructed that if an occupation where, from the nature and character of the work in the line of the employment and the attendant circumstances necessary in the performance of same, there are hazards and dangers incident to the occupation itself and of which the master knew, or by the exercise of ordinary care would have known the same, it is the duty of the employer to inform an inexperienced employe as to the danger of said employment and the extent of same, and failure to so inform him in this respect is negligence.

"Fourth: You are instructed, however, that if at the time of employment an employe knew of the dangers and the extent thereof incident to an occupation and employment in which he is employed, or if while in the service he acquired such knowledge, or in the ordinary discharge of his own duties he must necessarily have acquired such knowledge as to the danger and extent of same incident to such work, the employe assumes the risk and danger of such work, and the employer is not liable, although not warned or instructed by the employer as to the nature and extent of such danger.

"Fifth: You are instructed in this case, bearing in mind the definitions enumerated in the first, second, third and fourth paragraphs of this charge, that if you find and believe by a preponderance of

the evidence that with reference to the line of work and character of employment in which plaintiff was engaged in the caisson that was being constructed, there was incident to such work and such employment a danger and hazard resultant from such work known as the caisson disease, and that plaintiff contracted the same while in the performance of this work, as a result thereof; and if you further find and believe that the plaintiff at the time he engaged in said caisson work was an inexperienced person as to the nature and character of the work and of the hazard, if any existed, of the contracting of such disease as an incident thereto, and if you further believe that the employer, the Missouri Valley Bridge & Iron Company knew, or by the exercise of ordinary care should have known, of the extent and danger of such disease as incident to such work; and you further find and believe that the plaintiff at the time he engaged for such work and began the performance of same, he was not warned and instructed by defendant Bridge & Iron Company as to the extent and danger of such disease as incident to such work, if the same was incident thereto; and further find and believe that the failure, if any, to warn and instruct plaintiff was negligence, and that he contracted such disease as a result of such negligence, your verdict will be for the plaintiff on this issue, unless you find for the defendant upon this issue upon other instructions.

"Sixth: You are instructed that the burden of proof is upon the plaintiff to prove this issue by a preponderance of the evidence, and if he fails to discharge such burden as to all or any of the elements charged to you in the next preceding paragraph, your verdict will be for the defendant; or if you find that he was warned as to the hazard and the extent thereof, with reference to the disease as incident to the employment, if it was incident thereto, or that the defendant was not negligent; or if you find that the injury, if any, did not result from such negligence, if any occurred, in either event you will find for defendant on the issue charged.

"Seventh: You are instructed, in connection with the fifth paragraph, that if you find and believe from the evidence that when the plaintiff began the performance of the caisson work, he informed Bradshaw, the night superintendent of shifts, that he was 'a pressure man,' and if you further find and believe that the said Bradshaw accepted such statement, if you believe it was made, that he was acquainted with the duties that he was to perform and the hazard and extent of same as to caisson disease being an incident of such caisson work, and that a man of ordinary care would not have warned the plaintiff as to such hazard, if any, under the circumstances, you will find against plaintiff upon such issue.

"Eighth: Bearing in mind the fourth paragraph of this charge, you are instructed that if at the time plaintiff began the caisson work he knew of the caisson disease, and that it was a hazard as incident to the work he was to perform; or if before he was stricken with the caisson disease, if you believe he contracted the same, he acquired the knowledge from an outside source that such a disease was a hazard incident thereto; or if you believe that in the ordinary dis-

charge of his duties he necessarily acquired the knowledge that such disease was a hazard incident to such employment, you are instructed that plaintiff assumed the risk, and although you find that defendant was negligent as to warning plaintiff, on such issue defendant is not liable.

"Ninth: Again, you are instructed that when a person enters the employment of another he has the right to rely upon the assumption that the employer has exercised ordinary care in providing reasonably safe means and methods in carrying on his work within the line of his employment, and the employe is not required to exercise ordinary care in seeing whether the employer has failed in this respect, and you are again instructed that a failure to exercise ordinary care to provide such reasonably safe means for the protection of the employe is negligence for which he is liable if injury resulted thereby, unless the employe knew at the time he entered the employment, or if afterwards in the ordinary discharge of his duties, he must necessarily have acquired the knowledge that such means and methods were not reasonably safe, in which either event the employe assumed the risk, and the employer would be relieved of such negligence, although an injury resulted thereby.

"Tenth: Hence, you are instructed in this case, bearing in mind the first and second, as well as the ninth, paragraphs of this charge, that if you find the defendant, the Missouri Valley Bridge & Iron Company, in providing the means and methods in the performance of the caisson work, owed the duty to provide a 'sand hog house' as an avoidance of a hazard known as caisson disease (if you believe it was incident to the work), you are then instructed that said defendant should exercise ordinary care to provide a 'sand hog house,' as termed in the evidence, as a reasonably safe means and method for the performance of said work, and as a protection to its employes in the performance of said work as an avoidance of said hazard, if any existed; and if you further believe that the proper construction of same relative to the place where the caisson work was being performed, should be at a place as proximately and conveniently as the same can be situated to carry on the caisson work as a means reasonably safe for the protection of the employes in carrying on such work; and if you further find and believe from the evidence that the 'sand hog house' of the defendant Bridge Company was in such a position and such a distance relative to such work, as not to provide reasonably safe means and methods in carrying on the caisson work in which plaintiff was engaged, as a protection to the hazard and danger, if any existed, as to said caisson disease, and said defendant was negligent in such respect, and the plaintiff in consequence thereof contracted such disease, you will find for plaintiff upon such issue, unless you find for defendant upon instructions given you.

"Eleventh: You are instructed the burden is upon plaintiff to prove by a preponderance of the evidence that the defendant owed the duty and was negligent as to the position of said 'sand hog house,' and that his injuries resulted thereby, and if you find plaintiff failed to discharge the burden as to all or any of the elements necessary to his recovery, as charged to you in the next preceding paragraph, in

either event you will find for the defendant on this issue; or if you find affirmatively that the defendant did exercise ordinary care in the construction of said 'sand hog house' relative to the place where the caisson work was being performed by plaintiff, your verdict will be for defendant on this issue.

"Twelfth:   However, in connection with the tenth paragraph of this charge, if you find and believe from the evidence that the plaintiff knew at the time he was engaged to perform the caisson work, or if afterwards and before his alleged injury, he knew, or if in the ordinary discharge of his caisson work he necessarily acquired the knowledge that the relative position of such 'sand hog house' to the place where his caisson work was being performed was not in a position as to be a reasonably safe means and method in carrying on the work in which he was engaged, you are instructed that plaintiff assumed the risk incident to the position of such house relative to such place of work, and you will find for defendants upon this issue, although you may find in this connection defendant owed a duty, was negligent thereto and plaintiff was injured thereby.

"Thirteenth:   Now, if under the foregoing instructions, you shall find in favor of the plaintiff, you will allow him such sum of money by your verdict as in your judgment will be a fair, reasonable and just compensation for the injury, if any, which has been sustained, and in measuring the same you will consider the pain and suffering that he has undergone, both mentally and physically, if any, as a natural and probable consequence of the injury sustained by him, and such pain and suffering, if any, both mental and physical, as the evidence may show you he reasonably and probably will suffer in future consequence of such injury, if any, and if you find from the evidence that the injury sustained by him was of a permanent nature and that on account thereof his capacity to labor and earn money has been diminished and permanently impaired, then in addition to such damages as you may allow him for the pain and suffering, as above explained, you will also allow him such a sum of money as, if paid now, would be a just, fair and reasonable compensation to the extent of his impairment or diminished capacity to labor and earn money in the future, between the time that he arrived at the age of twenty-one years, and so long as you find from the evidence he will probably live; you can not allow him anything for loss of time between the date he was injured and the time when he arrived at twenty-one years of age, or for his diminished capacity to labor and earn money during that period of time, if any.   But in this connection you are further instructed that you can not and must not consider any evidence of treatment of the agents of defendant while in the 'sand hog house,' or the length of time he stayed there, as any element of damage in this case, but in this connection you are charged not to consider the value of any medical services as an element of damages as a recovery against defendants.

"Fourteenth:   You are further instructed that the Missouri Valley Bridge & Iron Company as to the work of sinking caissons for the Southern Kansas Railway Company is an independent contractor and the general rule is that one who employs an independent con-

tractor as to the result of the work to be performed is not liable, with the following exception: That where the contract between the two contracting parties contemplates and directly requires the performance of a work intrinsically dangerous, however skillfully performed, and the dangerous consequence can be reasonably anticipated from the work itself. Hence, you are instructed in this case that if you find and believe from the evidence in this case that the contract between the two defendants contemplated and directly required the performance of a work intrinsically dangerous, however skillfully performed by the Missouri Valley Bridge & Iron Company, and that the dangerous consequences, if any, could be reasonably anticipated from the work itself by the Southern Kansas Railway Company of Texas at the time said contract was made, you are then instructed that if you find a verdict against the Bridge & Iron Company your verdict should be against both defendants.

"Fifteenth: But you are further instructed that the burden is upon the plaintiff to prove the last foregoing issue by a preponderance of the evidence and each element charged to you in the last preceding paragraph, and if plaintiff has failed in this respect, your verdict will be for the Southern Kansas Railway Company of Texas.

"Sixteenth: You are further instructed that if you find a verdict against both defendants, you will further find a verdict against the Missouri Valley Bridge & Iron Company in favor of the Southern Kansas Railway Company of Texas under the contract between them."

In disposing of appellants' assignments of error we shall make no effort to discuss them seriatim, but shall try to group them as nearly as may be with reference to the issues presented.

We find no error in the court's action in refusing to hear and to pass on appellants' demurrers after the parties had announced ready for trial and had begun testing the jurors on their *voir dire* examination. The explanation attached to the bill shows that appellants were afforded an opportunity to present their demurrers and, upon an excuse stated, had failed to do so, and the ruling of the court in refusing to suspend the trial of the case and hear the demurrers was not an abuse of his discretion. Besides, rule 26 for the District and County Courts provides that exceptions not presented for determination before proceeding to the trial of a case on the facts, shall be considered as waived, and that the same shall constitute no part of the final record, unless some question be raised upon the action of the court in reference to them and they are presented in a bill of exceptions. This latter requirement has not been met in the present case, and we doubt if the matter is in such shape as to demand our consideration.

We shall next consider the requested peremptory instruction in favor of appellant, the Southern Kansas Railway Company of Texas. It will be observed, and the facts appear to have required such action, that the court instructed the jury that the Missouri Valley Bridge & Iron Company, with respect to the work of sinking the caissons for the piers of the railway bridge, was an independent contractor, and the general rule is well established that the employer in such case is not liable for injuries to others resulting wholly from

the default of such independent contractor or his employes. To this general rule there are certain more or less clearly defined exceptions, but we do not believe this case comes within any of them. The trial court appears to have determined the matter by a solution of the query whether or not the performance of the work in hand was intrinsically dangerous, however skillfully performed, and pointedly instructed a verdict against the railway company if such was found to be the fact. While the expression "intrinsically dangerous" has often been used in designating one of the classes of undertakings which would fall within the exception to the general rule above stated, it is not the sole guide, nor even a sufficient one, in determining that question in all cases. The exception within which the verdict of the jury has brought this case finds its best illustration in those cases where public streets have been made dangerous by excavations or otherwise, and where in the nature of things the safety of the traveling public has been endangered, unless needed precautions have been taken to prevent it. In such a case, as has been often said, the injuries are the direct result of the very thing which the employer authorized to be done, and he can not, therefore, escape liability by farming out the work to an independent contractor. It is in the nature of a nondelegable duty, owing to those whose life or limb is thus jeopardized. But where, as here, the injury is a result of an act or fault purely collateral to the work to be done, and is the result entirely of the wrongful act of the independent contractor or his workmen, the employer should not be held liable. The distinction between the two classes of cases was pointed out by us· in Cameron Mill & E. Co. v. Anderson, 34 Texas Civ. App., 105, which opinion was subsequently affirmed by the Supreme Court, 98 Texas, 156. Under all the evidence in this case the work of sinking the caissons and of constructing the piers was wholly under the control of appellant the bridge company, and was such a work in its nature as could be done without probable injury to anyone except in the event of negligence in the manner of doing it. The injuries alleged and proved in the present case were clearly the result solely of the negligence of appellant bridge company. The appellant railway company is not shown to have failed in the performance of any duty it owed to appellee, without which of course there can be no liability. As to appellant, the railway company, the judgment therefore must be reversed and here rendered in its favor.

By an objection to the evidence as well as to the charge submitting the issue, the point is made by appellants that appellee's petition did not raise the question of negligence in the location of what is denominated the "sand hog house." Upon this point we have had no little difficulty, but have finally concluded that the court erred in this respect. It could serve no useful purpose to set out at length the appellee's petition, but be it. sufficient to say the petition does not raise the issue of negligence in the matter of the location of the "sand hog house," as to which the court heard evidence and which was pointedly submitted as a ground of liability in the charge. The most that can be said in appellee's favor upon this point is that his petition alleged generally that it was the duty of defendants to pro-

vide him a safe place, means and method of performing the work, which they negligently failed to do, but it must also be noted that the petition further in great detail specified the particulars wherein appellants failed to furnish him a safe place, means and method of doing his work. The rule is in such case that the general allegation of negligence is thus made definite in the special allegations and the scope of inquiry therefore limited. Again, we are constrained to hold that the petition, when read as a whole, negatives the idea that reliance would be placed upon negligence in this particular, in view of the very full allegations as to the precise manner of the happening of the accident.

It is also insisted in this connection that the evidence did not raise the issue thus submitted, but on this point we disagree with the contention, for the evidence abundantly shows that unless proper preventive measures are taken, paralysis is not an infrequent result of caisson work, but rather is to be expected after the men have worked in the compressed air contained in the caissons and again exposed themselves to the normal pressure of the atmosphere at the surface. In such case it is shown to be absolutely necessary that a proper dressing room should be located conveniently by, where the men may exchange their work clothes for their walking clothes, take a hot bath or a stimulant, and thus gradually to allow the system to readjust itself to the normal pressure of the atmosphere. In the present case this dressing room was shown to be from four hundred to four hundred and fifty feet from the mouth of the caisson where appellee was at work. The weather was cold, and it is a legitimate deduction that his injuries, with all the fearful consequences detailed by the witnesses, resulted from the bridge company's negligence in not placing the sand hog house or dressing room nearer to the mouth of the caisson, where it should have been.

We hold there was no error in refusing to allow appellants' counsel to ask the witness Dr. Caylor if a man coming up out of the caisson into normal air pressure were to stand around in the cold and stop his movement, he would be liable to be stricken with the caisson disease, the objection to the evidence being that the hypothetical question found no basis in the testimony. The court sustained this objection and appellant has pointed us to no evidence that would indicate that the ruling was erroneous, save the testimony of a witness who was subsequently offered by the appellants themselves. It does not appear that appellants ever renewed their request for such testimony and the court's ruling at the time was correct. Appellee on cross-examination had specifically denied that he had stood around in the cold before going into the sand hog house.

The seventh assignment of error, complaining that the court erred in allowing appellee's mother to testify that before appellee was stricken and received the injuries alleged in this case there was nothing the matter with his kidneys or bowels, is not supported by the record. The statement of facts is an agreed statement and an examination of it, discloses that she only testified as to his condition in these respects up to the time when last she saw him, some five years previous.

We can not sustain the assignment complaining of the admission of evidence to the effect that appellee's mother had paid out a sum of money for nurse hire, since the explanation of the bill given by the court shows that he orally instructed the jury not to consider such testimony, and this also is a sufficient answer to the next assignment, complaining that the court refused to instruct the jury in writing not to consider such testimony, especially in view of the fact that the jury could not consider such item under the court's charge on the measure of damages. And as to the complaint that the court permitted the appellee to testify that his doctor's bill was six hundred or seven hundred dollars, the latter part of the thirteenth paragraph of the court's charge expressly directing the jury not to consider the value of any medical services as an element of damages, is a complete answer.

Since there was other evidence tending to show that the person who induced appellee to enter the employ of appellants was their agent, there was no error in permitting appellee to testify as to such person's statements to the effect that he was such agent. See White v. San Antonio Water Works Co., 9 Texas Civ. App., 465. Besides, the statements themselves appear to be so immaterial as to be without possible prejudice, even if erroneously admitted.

The fourth, sixth, eighth and twelfth paragraphs of the court's charge are each made the basis of an assignment of error, but without discussing in detail the criticisms made, it is sufficient to say that each of these charges presents a theory of the facts upon which a verdict for the defendants is instructed, and they are certainly correct as far as they go, and if appellants were entitled to or desired a more favorable charge, they should have requested it.

The special charge refused which is made the basis of the fourteenth assignment is not set out in the brief so that we may judge of its merits, but the question of assumed risk which the charge sought to have submitted appears to have been fully and fairly covered by the charge given. Besides, the propositions asserted under this assignment are abstract and not necessarily true. It can not be held in this case that appellee by accepting employment from the bridge company assumed all of the risks incident to the work as to the existence of which he is shown to have been ignorant.

There is manifestly no merit in the fifteen assignment, under which the proposition is asserted in effect that all the issues in the case should be presented in the same section of the court's charge. This obviously can not be done, and the particular defense urged under this assignment was fairly submitted in a separate paragraph of the court's charge.

The fourth and tenth special charges were properly refused because, if for no other reason, they ignored the issues of inexperience on appellee's part and appellant's failure to warn him of the dangers of his employment.

It is insisted in the nineteenth assignment of error that the court erred in the eleventh paragraph of his charge by instructing the jury "that before they could find for defendants on the question of negligence in the location of the sand hog house, they must find affirma-

tively that defendant did exercise ordinary care in the construction of same relative to where the caisson work was being performed by plaintiff," since the burden was upon appellee to show negligence in its location.   It is true such burden is upon the appellee, but it is equally true, as will be seen from an inspection of the paragraph complained of, that the charge did not place the burden on appellants.

The thirteenth paragraph of the court's charge is next attacked because, first, it assumed that appellee was less than twenty-one years of age at the time he was injured, and, second, there being no evidence as to the length of time plaintiff would probably live, it was error for the court to allow the jury to consider such question in measuring the damages.   The assumption referred to, resulting necessarily in lessening the verdict returned against appellants, is certainly to their advantage, while the second proposition is not supported by the record.   The jury would be authorized to determine for themselves the length of time appellee would probably live, in view of his age and injuries.   It was a matter concerning which mortality tables would be of little or no use.

The remaining assignments complain that the verdict and judgment are contrary to the evidence in the numerous particulars pointed out, but these will of course not be discussed in view of our judgment of reversal.

The judgment of the District Court as to appellant, the Southern Kansas Railway Company of Texas is reversed and judgment here rendered for such appellant, but as to appellant, the Missouri Valley Bridge & Iron Company, the judgment is reversed and the cause remanded for another trial.

*Affirmed in part and reversed and remanded in part.*

Writ of error refused.