### GULF, C. & S. F. RY. CO. v. BALDWIN et al.   (No. 10097.)

Court of Civil Appeals of Texas. Dallas. Jan. 28, 1928.

**1. Carriers ⊗⟹284(2)—Railroad must exercise same care in discovering dangers to passengers committed by another, as it does to be free from committing acts.**

Law enjoins on railroad company duty to exercise the same care to discover and guard against danger to safety of passenger from acts committed by another as it does to be free from own commission of such acts.

**2. Carriers ⊗⟹295(5), 314(2)—Railroad must use same care to discover throwing of cutover switch as to refrain from throwing switch necessitating emergency stop causing injury, and charge that sudden stopping was negligence comprehended both matters.**

In action for injuries to passenger caused by sudden emergency stopping of train in attempting to evade diversion to cut-over track and possible collision, railroad was under duty to use same care to discover, in time to avoid danger, that cut-over switch had been thrown, as not to commit act of actually throwing switch, and hence charge in petition that sudden stopping of train was negligence comprehended failure to discover that switch had been negligently thrown, just as much as it did negligent act of throwing switch.

**3. Carriers ⊗⟹280(1)—Railroad must exercise prudence of very prudent person in guarding against dangers to passenger.**

Railroad must exercise such high degree of foresight as to possible dangers to passengers, and such high degree of prudence in guarding against them, as would be used by very cautious, prudent, and competent person under similar circumstances.

**4. Carriers ⊗⟹320(15)—Evidence held sufficient to raise issue for jury as to railroad's negligence in making emergency stop and failing to discover conditions causing emergency.**

In action for injuries to passenger caused by sudden emergency stopping of train in attempting to evade diversion to cut-over track and possible collision, evidence was sufficient to raise issue for jury of railroad's failure to exercise care in sudden stopping and in failing to take precaution in operating train as would guard against danger incident to emergency stop, and failure to discover conditions causing emergency in time to evade danger, though there was no proof as to whose culpable act produced condition imperiling safety of passengers.

**5. Negligence ⊗⟹119(7)—Trial ⊗⟹352(4)— Plaintiff is restricted in right of recovery to negligence alleged, though proof shows other grounds of negligence; court must confine submission of issues of negligence to acts alleged.**

Plaintiff, in suit for damages because of injury by negligent acts of defendant, is restricted in right of recovery to grounds of negligence alleged in petition, though proof may show actionable negligence in other respects than those alleged, and hence trial court, in submitting issues of negligence, must confine submission to acts of negligence alleged.

**6. Trial ⊗⟹352(4)—Submission of issue of negligence in terms clearly comprehending issue not made by pleading is error.**

In submitting issue of negligence, it is error to so frame submission that its terms not only comprehend issue made by pleading, but clearly comprehend issue not made by pleading.

**7. Appeal and error ⊗⟹1062(1)—Petition alleging particular negligence in operating train excluded other acts of negligence, and submission of negligence in general terms was error, but not harmful under record.**

In action for injuries to passenger caused by sudden emergency stopping of train, petition alleging negligence in certain particulars excluded different and independent acts connected with operation of train that might have been made basis for allegation of negligence, and hence special issue submitting question of railroad's negligence in general language, directing jury to entire conduct of railroad's employees, and authorizing finding of negligence in any respect jury might have believed operation violated duty owed to passenger, was error, but not harmful in view of record.

**8. Appeal and error ⊗⟹1050(1)—Evidence ⊗⟹314(2)—Passenger's testimony that physician, prior to accident, stated her health was perfect, held hearsay and its admission reversible error, where relating to material contested issue.**

In suit for injuries suffered by passenger by sudden stopping of train, testimony by passenger that she was examined by physician four years prior to injury, and that physician stated her health was perfect, was objection-

able as hearsay, and its admission was reversible error, where evidence showed that it was on material contested issue as to whether passenger's physical condition after injuries was due to prior ailment.

**9. Evidence ☞471(13)—Witness' testimony that passenger was in perfect health at time of accident held erroneously admitted as opinion and conclusion.**

In suit for injuries suffered by passenger by sudden stopping of train, evidence by passenger's witness, acquainted with condition of passenger's health prior to accident, that passenger was in perfect health at time of accident, *held* erroneously admitted as an opinion and conclusion.

**10. Appeal and error ☞1050(1)—Evidence 314(2)—Passenger's testimony that physician told her her spine and head were injured by accident held hearsay, and its admission was harmful error where on contested issue.**

In suit for injuries suffered by passenger by sudden stopping of train, testimony by passenger that following injury she was treated by doctor, who told her that her spine had been hurt and her head injured, was hearsay, self-serving, and not binding on railroad, and its admission was harmful, where relating to contested issue and physician who was witness for passenger did not testify to such injuries.

**11. Evidence ☞559—Testimony of professional standing of physician attending injured passenger held incompetent, where professional ability was not impeached.**

In suit for injuries suffered by passenger by sudden stopping of train, testimony that witness knew general reputation of physician attending injured passenger, and that he was considered the finest physician in his community, was incompetent, where railroad offered no evidence to impeach professional standing or ability of physician.

**12. Damages ☞159(3)—Evidence of earnings in real estate business by injured passenger held properly admitted on question of damages under allegation that passenger would be unable to resume former activities.**

In suit for injuries suffered by passenger by sudden stopping of train, allegation in petition that passenger would never against be able to resume her former activities justified admission of evidence as to earnings made by passenger in real estate business prior to injury, and it was not error to refuse to exclude such evidence from consideration of jury on question of damages.

Jones, C. J., dissenting in part.

Appeal from District Court, Dallas County; Royall R. Watkins, Judge.

Suit by Mrs. L. E. Baldwin and husband against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, W. P. Donalson, of Dallas, and Lee, Lomax & Wren, of Fort Worth, for appellant.

Alvin M. Owsley and W. J. Rutledge, Jr., both of Dallas, for appellees.

JONES, C. J. In a suit in a district court of Dallas county, appellees recovered judgment in the sum of $14,000 against appellant, the Gulf, Colorado & Santa Fé Railway Company, as damages for personal injuries suffered by Mrs. L. E. Baldwin while a passenger on appellant's railway. As appellee L. E. Baldwin is the husband of Mrs. Baldwin and is joined because of such relationship, the term "appellee" will be used to designate Mrs. L. E. Baldwin. The appeal is duly prosecuted to this court.

The suit is based on the following facts: On the 12th of November, 1925, appellee undertook a journey over appellant's line of railway and its connecting carriers from Newton, Kan., to Fort Worth, Tex., and while on appellant's train in the city of Fort Worth, and just before arriving at the depot in said city, the train was brought to such a sudden and unusual stop as that appellee was thereby caused to receive serious, painful, and permanent injuries. The sudden stopping of the train was the result of an emergency stop made by its engineer by an immediate application of all the braking power of the train. The engineer was moved to make this emergency stop because he became confronted with a condition which he believed called for such action on his part. Appellant's train came into the depot in the city of Fort Worth on what is known as a "passenger lead track." This track is on a curve beginning about 200 yards north of the depot. There is a track known as the "freight lead track" that parallels the passenger lead track some distance and is the first track east of same. There is what is termed a "cut-over switch" connecting these tracks, by means of which trains may be diverted from one of said tracks to the other. On the occasion in question, for some reason unexplained, and by some person unnamed, in the record, this switch had been thrown so that the train on which appellee was riding would have been diverted from the passenger track onto this cut-over track. On the freight lead track there were some sleeping cars, and the engineer was not certain whether his train, when it was diverted by the said switch, would clear these cars, nor did he know whether there was an engine attached to these cars moving them and a collision thereby result. The engineer did not discover that the switch was thrown until he was within about 40 feet of same, and he gives as his reason for failure to discover this condition sooner the fact that his side of the engine cab was on the outward bend of the curve, and also that there were some express trucks lined up which obscured his vision until he got to the point where he made the emergency stop.

---

Appellee in her petition alleged negligence as follows:

"That, while the train carrying your petitioner was being operated over the lines of railroad used by the defendant company, leading into the passenger station in the city of Fort Worth, the agents and employees of said defendant company carelessly and negligently brought said train to a violent and abrupt stop. * * * That the manner in which the train being operated by the defendant, its agent and employees was brought to a stop was the result, as your petitioner is informed and believes and charges the fact to be, of a collision between said train and a part of another train on said line of railroad, or wa's the result of an emergency which developed from an impending wreck. And that the cause for stopping said train, as well as the manner of stopping said train, were both the result of negligence and carelessness of the defendant, its agents and employees in operation of trains on said lines of railroad. That all of the matters hereinbefore alleged were direct and proximate causes of an injury to your petitioner. * * *"

The case was tried to a jury and submitted on special issues. Appellee's cause of action was submitted in special issues Nos. 1 and 2, and such issues and the jury's verdict thereon are:

"No. 1. Was the defendant, Gulf, Colorado & Santa Fé Railway Company, through its agents, servants, or employees, negligent in the operation of the train upon which the plaintiff Mrs. L. E. Baldwin was a passenger on the 12th day of November, 1925? Answer: Yes."

"No. 2. Was the negligence, if any you have found, of the defendant, Gulf, Colorado & Santa Fé Railway Company, the direct and proximate cause of the injury or injuries to the plaintiff Mrs. L. E. Baldwin? Answer: Yes."

At the conclusion of the evidence, appellant requested peremptory instruction in its favor, which was refused. This refusal is made the basis for proper assignments of error, and appellant prays that the case be reversed and rendered in its favor. Appellant's theory, on which such contention is made, is shown by its fifth and seventh objections to the court's submission of the case to the jury. These objections were:

"(5) Because the evidence introduced by plaintiff in support of the allegations of negligence, and the only legitimate inferences which can be drawn therefrom, show that the agents and employees, alleged to have been guilty of negligence, were not so guilty, but, on the contrary, that the cause of plaintiff's accident was an independent cause, not properly made the basis of any right for recovery by the plaintiff in this case."

"(7) Because it is purely a matter of speculation and surmise in this case as to when and by whom the defendant's cross-over switch was thrown, making the sudden stopping of the defendant's train necessary and therefore there is no basis for a finding that defendant's agents or employees in operation of the trains, as alleged in plaintiff's petition, were guilty of negligence."

Appellant seeks a reversal of this case because of the action of the court in overruling its objection to the manner in which appellee's right of action was submitted in special issue No. 1, and has duly assigned error on such action of the court. The objection to the submission of special issue No. 1 is in effect that such submission is too general, in that it did not restrict appellee's right of recovery to the specific grounds of negligence alleged in the petition, but authorized the jury to find negligence in any respect in reference to the operation of trains on the occasion in question.

Appellant also seeks reversal on errors duly assigned because of the admission over its objection of certain evidence. The nature of this evidence and the assignments of error on its admission will appear in the discussion on those issues.

Was there error in the refusal of the peremptory instruction in appellant's favor? An analysis of the allegations in appellee's petition discloses that negligence is charged because of the sudden and unusual stopping of the train, and because of the cause which rendered necessary such stopping of the train. Such cause is alleged to be a collision between said train and a part of another train, or the existence of an emergency calling for an immediate stopping of the train because of an impending wreck. The allegation of negligence because of the emergency stop made by appellant's engineer comprehends not only the act of so stopping the train, but also the failure to take such precaution in the operation of the train as would have guarded against the danger to passengers incident to an emergency stop. The allegation of negligence because of the existence of the emergency comprehends, not only the affirmative acts producing the existence of the conditions that created the emergency, such as the wrongful throwing of the switch, but also the failure of appellant's employees operating the train to discover such conditions in time to have avoided the dangers incident to an emergency stop.

[1-4] Did the evidence raise an issue of negligence, either because of the emergency stop, or because of the alleged cause which made necessary the emergency stop? If an issue of fact is raised in either respect, then it was not error to refuse the requested peremptory instruction. Manifestly no emergency stop would have been made if the cut-over switch had been lined up for the passenger track instead of being thrown to divert trains from such track. Whose culpable act brought about this condition which primarily imperiled the safety of the passenger train on the occasion in question? There is no answer to this question from the record.

It is in the range of possibility that such act might have been committed by a trespasser upon appellant's property. Because the proof failed in this respect, appellant contends that there is raised no issue of the negligence alleged, although its employees operated this train into such a place of peril as that its engineer believed it to be the least of the dangers confronting the train, to make the sudden and violent stop from which appellee received serious and permanent injuries. We cannot agree to this contention, for the law enjoined upon appellant the exercise of the same care to discover and guard against danger to the safety of its passengers from acts committed by another as it does in reference to being free from its own commission of such acts. In the instant case, the law enjoined upon appellant the use of the same care to discover that this cutover switch had been thrown, in time to avoid danger therefrom, as it did not to commit the act of actually throwing the switch. The charge in the petition, that the sudden stopping of the train was negligence, comprehended the failure to discover that the switch had been negligently thrown just as much as it did the negligent act of throwing the switch. Appellee, being a passenger on appellant's train, the law enjoined upon appellant the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by a very cautious, prudent, and competent person under similar circumstances. International & G. N. Ry. Co. v. Welch, 86 Tex. 203, 24 S. W. 390, 40 Am. St. Rep. 829; International & G. N. Ry. Co. v. Halloren, 53 Tex. 46, 37 Am. Rep. 744. We are of the opinion that the evidence in this case was sufficient to raise the issue of the failure of appellant to exercise this care as to her safety as such failure was alleged in the petition. Texas & P. Ry. Co. v. Storey, 29 Tex. Civ. App. 483, 68 S. W. 534; Missouri K. & T. Ry. Co. of Texas v. Wolf, 40 Tex. Civ. App. 381, 89 S. W. 778. The assignments of error with reference to this issue are overruled.

[5-7] Was there error in the manner in which special issue No. 1 was submitted to the jury? It is a rule of law, uniformly followed in this state, that a plaintiff in a suit for damages because of an injury by alleged negligent acts of a defendant, is restricted in his right of recovery to the grounds of negligence alleged in the petition, though the proof may show actionable negligence of the defendant in other respects than those alleged. St. Louis Southwestern Railway Co. of Texas v. Johnson, 100 Tex. 237, 97 S. W. 1039; G., C. & S. F. Ry. Co. v. Pryor (Tex. Civ. App.) 238 S. W. 1040; Gulf, C. & S. F. Railway Co. v. Scott (Tex. Civ. App.) 27 S. W. 827; Johnson v. G., H. & N. Ry. Co., 27 Tex. Civ. App. 616, 66 S. W. 906; Dallas

& O. C. Elec. Ry. Co. v. Harvey (Tex. Civ. App.) 27 S. W. 423. It follows that the trial court, in submitting issues of negligence to a jury, must confine such submission to those acts of negligence alleged in plaintiff's petition, and it is error to submit an issue of negligence not comprehended by the pleading. It is also error, in the submission of the issue of negligence, to so frame such submission as that its terms not only comprehend such issue made by the pleading, but clearly comprehends an issue not made by the pleading. In the instant case, appellee's petition alleged negligence in certain named particulars relating to the operation of the train on which she was a passenger, and by such specific allegations excluded from her cause of action other and different independent acts of defendant connected with the operation of the train that might have been made a basis for allegations of actionable negligence. The special issue under review is expressed in such general language as that it directs the minds of the jury to the entire conduct of appellant's employees in reference to the manner in which the evidence disclosed they operated the train on this occasion, and authorized a finding of negligence in any respect the jury might have believed this manner of operation violated a duty owed to appellee. Timely objection was made to this submission, and the court's attention specifically directed to this error in the submission. The writer believes that the action of the court in overruling such objection and in submitting the issue of the negligence of appellant in the language of special issue No. 1 was reversible error. The majority of the court, however, believe that, though such special issue is subject to the criticism made by the objection, yet, under the record of this case, no harm resulted to appellant and that the error was harmless. As this case must be reversed on other grounds, it is not deemed necessary to discuss further the issue made by this assignment of error, for in another trial the court doubtless will restrict the submission of negligence to the matters charged in appellee's petition.

[8] Appellant assigned error on the admission, over its objection as hearsay, of testimony of appellee that, in the year 1921, she was examined by Dr. George Angus, of Omaha, Neb., who made a thorough examination, including a Wassermann test, urinal test, heart test, blood test, etc., and that the doctor in that connection stated that her health was perfect. The statement in this evidence, that the doctor said her health was perfect, is made the basis for a proper assignment of error. This evidence was subject to the objection made and its admission reversible error if on a material contested issue. Appellee claimed to be in perfect health at the time of the injury, and claimed that the permanent disability resulting from the injuries,

and which renders her physically unable to perform any of the activities she had theretofore engaged in, are due solely to the injuries she received on the occasion in question. The fact of the soundness of her physical condition at the time of the injury, and that her present physical condition resulted solely from the injury she received on the occasion in question, were contested by appellant. It was shown by evidence that, in the year 1913, appellee had undergone what appears to have been a serious operation for female trouble at Baylor Hospital. It was also shown by a medical witness who had examined her that, in his opinion, when she received the injury, she had a cystic ovary which she had carried over from the time she was operated on in 1913, and was suffering from same at the date of the accident. This raised the issue as to whether appellee's physical condition after her injuries was in part due to the ailment from which she may have been suffering at the time of the accident. The hearsay testimony was therefore upon a material contested issue in the case, and this assignment of error must be sustained.

[9] The assignment of error in reference to the ruling of the court on evidence offered by appellee's witness Mrs. Albert Hunt must be sustained. This witness, on the qualification that she was acquainted with the operation performed on appellee in Dallas in 1913 and saw her daily and noticed the condition of her health, over the objection of appellant that it was an opinion and conclusion and therefore incompetent, was permitted to state that appellee was in perfect health at the time of the accident. Roth v. Travelers' Protective Association of America, 102 Tex. 241, 115 S. W. 31, 132 Am. St. Rep. 871, 20 Ann. Cas. 97; Jines et al. v. Astle et al. (Tex. Civ. App.) 170 S. W. 1081.

[10] The assignment of error on the admission of the evidence of appellee, over appellant's objection that it was hearsay, self-serving, and not binding on the defendant, that, after her return to Manitou, Colo., following the injuries she received on the occasion in question, she was treated by Dr. McCorkle and that he told her that her spine had been hurt and her head injured, must be sustained. Dr. McCorkle was a witness for appellee, and did not testify to injuries either to her spine or to her head. The admission of this testimony was on a contested issue and clearly harmful to appellant.

[11] Appellant's assignment of error, in reference to the admission of the testimony of Mrs. Albert Hunt, over the objection that it was incompetent, to the effect that she knew the general reputation of Dr. McCorkle as a physician in Manitou, Colo., and that he is considered one of the finest physicians there, must be sustained. Appellant had offered no evidence to impeach the professional standing or ability of Dr. McCorkle, who testified as a witness for appellee, and it was clearly incompetent, under the circumstances, to offer proof of his professional standing. Tomson v. Heidenheimer, 16 Tex. Civ. App. 114, 40 S. W. 425; G., C. & S. F. Ry. Co. v. Younger (Tex. Civ. App.) 40 S. W. 423; Young v. Sheppard (Tex. Civ. App.) 40 S. W. 62.

[12] Error is assigned on the admission of evidence as to earnings made by appellee in the real estate business previous to the injury; error is also assigned because the charge of the court did not exclude this evidence from the consideration of the jury on the issue of the damages suffered, and also of refusal of a specific charge excluding the evidence from the consideration of the jury. The specific ground of these assignments of error is that appellee's pleading gives no basis for the admission of such evidence. The petition contains allegations in reference to the inability of appellee to perform her household duties since her injuries, and then states in effect that she never will again be able to resume her former activities. There was no special exception directed to this latter allegation, and we are inclined to the belief that it justified the court's ruling, and we overrule these assignments of error.

In view of another trial of the case, we would suggest to the trial court that the definition of "negligence," when it is applied to appellant, its agents and employees, is not applicable to this case. Appellee was a passenger on appellant's train, and appellant was under the duty of exercising for her safety, while she was such passenger, the care that a very cautious, prudent, and competent person would have exercised under the same or similar circumstances, and a violation of this duty would be negligence. If the evidence should call for a definition of "negligence" as applied to appellee, the court's definition in this case would be correct.

Because of the errors above pointed out, it is the opinion of the court that this case should be reversed and remanded.

Reversed and remanded.