## GULF STATES UTILITIES CO. v. MITCHELL.

### No. 3061.

Court of Civil Appeals of Texas. Beaumont. March 4, 1937.

Rehearing Granted April 7, 1937.

Orgain, Carroll & Bell, of Beaumont, for appellant.

Shivers & Keith, of Port Arthur, for appellee.

WALKER, Chief Justice.

By written contract dated the 22d day of June, 1934, appellee, William Mitchell, bought from appellant, Gulf States Utilities Company, an electric stove, purchase price $101.75, payable $5 on delivery of the stove "and the further sum of 2.70 dollars on the 20 day of each and every month beginning with June 1934, until the full amount of said purchase price has been paid." The contract of sale contained the following condition: "6 Time is of the essence of this contract and in case of Purchaser's default in any deferred payment hereunder or in the performance of any one of the terms or conditions hereof, then this contract shall be forfeited and determined at the option of the Company and Purchaser shall forfeit all payments made by Purchaser on this contract and such payments shall be retained by Company as liquidated damages; and Company, its assigns or agents, may thereupon enter upon the premises where such property is stored or kept and retake possession thereof without previous demand or notice. Failure of Company to claim a forfeiture for any default of Purchaser shall not prevent the enforcement of forfeiture for any subsequent default." By written contract dated the 13th of September, 1934, containing the same condition copied above from the electric stove contract, appellee bought from appellant an electric refrigerator, purchase price $99.50, payable $2.75 on delivery of the refrigerator "and $2.75 per month, on the 13th day of each month beginning with October, 1934." The range and refrigerator were installed in appellee's home in the city of Port Arthur, and he paid the down payments. Appellee also used electric current furnished by appellant. He had in his home an Evinrude outboard motor. On June 14, 1935, appellee was in default in the payments due on electric current, the stove, and the refrigerator. On that day he and his family left home early in the morning and spent the day fishing. While they were absent from their home on their fishing picnic, appellant's servants entered the home and "repossessed" the stove and refrigerator, and some one stole the Evinrude outboard motor. This suit was brought by appellee against appellant for the damages suffered by him by reason of the unlawful entry of his home.

For cause of action appellee alleged: (1 and 2) That he, a resident citizen of the city of Port Arthur, Tex., purchased from appellant the range and refrigerator described above, to be paid for as stated above; that appellant "was to install a certain meter" and furnish electric current at a lower rate per kilowatt hour, which it failed to do; that appellant charged him the regular domestic rate; that appellant represented as a condition of his purchase of the stove and refrigerator that his electric charges would not exceed $6 per month; that the charge for the first month was $30, which appellee protested but agreed to pay "after he finished and completed the payments due upon the stove and ice box." (3) "Plaintiff would further show that he used such equipment in his home for several months; that he had made the payments due thereon; that he received a receipt from the defendant herein in the sum of $9.43, which receipt is dated May 23, 1935; that of such sum the amount of $5.45 was designated on such receipt as 'merchandise.' Your plaintiff would further show that the item referred to as merchandise is the stove and refrigerator described herein." (4) On the 14th day of June, 1935, he left with his family

on the fishing trip mentioned above; that before leaving home he securely locked his house, but when he returned his house had been "broken open," his household furniture disarranged, and the range and refrigerator removed from his home, and further "that an Evinrude outboard motor, owned by the plaintiff, was gone; that the refrigerator and stove hereinbefore described were gone; that the doors of his house had been left open. Plaintiff would further show that he gave no one permission to go into his house during his absence." (5) On inquiry he learned that appellant's servants had entered his home; he called upon appellant and was advised that it had "repossessed" the stove and refrigerator, but denied taking the motor and "disarranging the contents of the house." (6) Appellant was a married man; one of his children was very small; he used the stove and refrigerator in his home; he was not able for several weeks to get another refrigerator; without a refrigerator the food for the children spoiled and they were made sick, causing him great expense for doctor's bills, etc.; that the motor was of the reasonable market value of $167.50. (7) "Plaintiff would further show that on the day before the date alleged herein, in addition to the acts described herein, the defendant did disconnect the electrical current in the plaintiff's home; that by reason of such disconnection of service plaintiff herein was deprived of the use of electric lights; that his home was equipped for the use of electricity in lighting; that he used electric current for the purpose of lighting his home, cooking and preserving his food and ironing clothes; that by reason of the wrongful acts of the defendant, plaintiff was deprived of the use of the electrical current and of the refrigerator and stove to his great annoyance, discomfort and inconvenience; that for the loss of the use of such current and equipment, this plaintiff has been damaged in the sum of $1,000.00; that by reason of the wrongful act of the defendant herein in appropriating the motor described herein, your plaintiff has been damaged in the sum of $167.50. Plaintiff further alleges that by reason of the unlawful, arbitrary and malicious action of the defendant, acting by and through its duly authorized agents, plaintiff ought to recover the sum of $2,000.00 as exemplary damages." Appellee prayed for judgment for actual and exemplary damages, costs of suit, general and special relief, etc.

Appellant answered by general demurrer, general denial, and by special plea of the conditions of the sale contract, that appellee had defaulted in his payments, and that in repossessing the stove and refrigerator it had exercised the rights granted to it by the contract. Appellant also pleaded for affirmative relief against appellee by cross-action.

Appellee filed a supplemental petition pleading demurrers, general and special, against appellant's answer and cross-action, general denial, and specially as follows: "Subject to the foregoing, plaintiff alleges that the alleged amount due for electrical energy was disputed as between the parties and plaintiff alleges that when he purchased said electrical stove, the agents and servants of the defendant promised the plaintiff that the charge for electricity necessary to operate the said stove would be a very nominal charge; that contrary to the said statements, the defendant did present your plaintiff with a large bill for electrical current consumed; that your plaintiff did dispute the said account; that notwithstanding the said bona-fide dispute between the parties, the defendant did dis-connect plaintiff's premises with electricity; and, here and now, plaintiff pleads there was a bona-fide dispute between the parties to said electrical charge." On conclusion of the evidence appellant moved for an instructed verdict, which was refused; then, subject to that motion, it moved for an instructed verdict on the several items of damage sued for, which motions were also refused.

The case was submitted to the jury on special issues, and judgment was entered in favor of appellee for the damages assessed by the jury's verdict.

■ Appellee's case was submitted to the jury on the theory that by accepting on the 23d day of May, 1935, his payment on account, pleaded by the third paragraph of the petition copied above, appellant "waived" its right to insist upon another payment for one month. The issue of waiver was submitted to the jury by question No. 1, reading as follows, answered as indicated: "Do you find from a preponderance of the evidence that the defendant, Gulf States Utilities Company, by accepting plaintiff's money on May 23, 1935, waived its right to insist upon another payment for one month?" To which the jury answered: "Yes." Appellant excepted to this issue on the following grounds: (a) It was without support in

the pleadings; (b) it was without support in the evidence; (c) if "waiver" was shown, it was without consideration; (d) the jury's answer was without support in the evidence. We sustain appellant's assignment that the issue of waiver was not pleaded. Paragraph 3 of the petition is relied upon by appellee to support the submission of question No. 1; this pleading does not even suggest the issue of waiver, nor is the issue suggested by any other allegation in the petition. The first exception is sustained; we pretermit a discussion of the other exceptions.

By their answers to questions 2 to 10, inclusive, the jury found that when appellee left his home on the morning of June 14th, he "left his home locked"; that appellant, through its agents, entered appellee's home on June 14, 1935, without appellee's knowledge and consent; that appellant removed appellee's electric stove and refrigerator from his home, without appellee's consent; that on said date appellant's servants "left the doors of plaintiff's home unlocked" and "left the door of plaintiff's home open"; "that such act * * * was negligence"; that by entering appellee's home without his knowledge and consent and by leaving the doors of the home open appellant was guilty of negligence.

Questions 14, 15, and 16 were predicated upon an affirmative answer to issue No. 1. Answering question 14, the jury found that $150 "would reasonably compensate the plaintiff for the inconvenience of being deprived of the use of electric current and power." By its answer to question 15 the jury found that $300 "would reasonably compensate the plaintiff for the inconvenience of being deprived of the use of his electric stove and refrigerator." Answering question 16 the jury found that $100 "would reasonably compensate the plaintiff for the embarrassment, if any, sustained by reason of the taking of the stove and refrigerator by the defendant." As question No. 1 was without support in the pleadings, the answers of the jury to questions 14, 15, and 16 must necessarily fall. Appellant reserved certain exceptions to these issues which should be met upon another trial.

The issues of malice and gross negligence were submitted by special issues Nos. 17, 18, and 19. The jury's answers to these questions must fall because, as a matter of law, they are predicated upon an affirmative answer to issue No. 1 and to the jury's answers to questions 14, 15, and 16, assessing actual damages. Appellant's exceptions to these questions can be obviated upon another trial.

Special issues Nos. 11, 12, and 13 were as follows, answered as indicated:

"Special Issue No. 11. Do you find from a preponderance of the evidence that the plaintiff, on the occasion in question, lost an Evinrude outboard motor?" To which the jury answered: "Yes."

"Special Issue No. 12. If you have answered special issue No. 11 in the affirmative, and only in that event, do you find from a preponderance of the evidence that the loss of such motor was a direct and proximate result of the negligence, if any, of the defendant, Gulf State Utilities Company?" To which the jury answered: "Yes."

"Special Issue No. 13. If you have answered Special Issues No. 11 and 12 in the affirmative, and only in that event, from a preponderance of the evidence, what amount, if any, do you find that said outboard motor was reasonably worth to the plaintiff on June 14, 1935, excluding any fanciful or sentimental value, if any, to the plaintiff?" To which the jury answered: "$129.95."

To question No. 12 appellant reserved the following exceptions: (a) It was without support in the pleadings; (b) it was without support in the evidence; (c) the undisputed evidence showed that the motor was not lost as a direct and proximate cause of any act of the defendant; (d) appellant's ninth proposition is as follows: "The jury having found in answer to Special Issue No. 12 that the loss of the motor was the proximate result of the act of this appellant, and the evidence being undisputed that it was not a proximate result of the act of this appellant, there being no evidence that this appellant converted or appropriated said motor and the evidence being just as consistent with the theory that someone broke into the house and stole said motor prior to the time the appellant repossessed the range and stove, the evidence being undisputed that the back screen door was open at the time the appellant repossessed the stove and refrigerator, there being no testimony that any act on the part of this appellant caused the loss of said motor, the trial court committed prejudicial error in re-

fusing to set aside said finding." These exceptions and propositions are overruled. Appellant's theory of appellee's petition was that it was charged with converting the motor; with taking it out of appellee's house. That theory is not correct. Appellee pleaded only that his motor "was gone" when he returned home from his fishing trip; he charged appellant with unlawfully entering his home; that this act was negligence; and that this unlawful act by appellant was a proximate cause of the loss of his motor. These issues were submitted to the jury by questions 11 and 12 and their answers to these questions have support in the evidence. It cannot be said in this case that the evidence is evenly balanced on the issue as to whether or not appellant's servants unlocked the door to appellee's house. Appellee testified that the doors of his house were locked when he left home that morning. The presumption is that these doors remained locked until appellant's servants entered the house. True, they testified that they found the house unlocked, but the credibility of their testimony was for the jury. One of appellee's neighbors testified that he saw appellant's servants enter the house; he saw no one else enter the house or approach the house. Clearly, we think, the issues submitted by questions 11 and 12 have support in the evidence.

It follows that the judgment of the lower court in all respects must be reversed and the cause remanded for a new trial, except that portion of the judgment awarding appellee $129.95 as the value of his motor. In that respect the judgment of the lower court is affirmed. The costs of the appeal will be taxed against appellee.

Reversed and remanded in part, and in part affirmed.

### On Rehearing.

We are in error in our original opinion in our statement that appellee plead only that his motor "was gone"; that general allegation was followed by the following specific allegation: "That by reason of the wrongful act of the defendant herein in appropriating the motor described herein, your plaintiff has been damaged in the sum of $167.50." Where recovery is predicated upon a general allegation, followed by a specific allegation explaining the general allegation, the plaintiff is confined to his specific allegation. Kansas City, M. & O. Railway Co. v. James (Tex.Civ.App.) 190 S.W. 1136; Missouri Valley Bridge & Iron Co. v. Ballard, 53 Tex.Civ.App. 110, 116 S.W. 93. On this proposition of law we sustain appellant's theory of appellee's petition that it was charged only "with converting the motor; with taking it out of appellee's house." There was no allegation in the petition that the motor was lost as a proximate result of the acts of negligence found against appellant by the jury's verdict. On this conclusion, the judgment in appellee's favor for damages for the loss of the motor is without support in the pleadings. In support of this conclusion, we quote the following general rule from 30 Tex.Jur. 721, par. 61: "A necessary allegation of the plaintiff's pleading is that the injury or damage for which recovery is sought was proximately caused by the defendant's act, or was the natural and probable result thereof, or ought to have been foreseen by him, in the light of the attending circumstances," which has support in Van Velzer v. Houston Land & Trust Co. (Tex.Civ.App.) 16 S.W.(2d) 865, and City of Wichita Falls v. Swartz (Tex.Civ.App.) 57 S.W.(2d) 236. It is also the law that in a tort action, the plaintiff is restricted to the acts of negligence pleaded in his petition, though the proof may show other acts of negligence, and, in submitting the case to the jury, the issues must be so framed as to submit only the issues raised by the pleadings. Gulf, C. & S. F. Railway Co. v. Baldwin (Tex.Civ.App.) 2 S.W.(2d) 520.

For the reasons stated, we erred in affirming the judgment of the lower court awarding appellee damages in the sum of $129.95 for the loss of the motor. It follows that the judgment of the lower court in all respects should be reversed and the cause remanded for a new trial.