## MAGNOLIA PIPE LINE CO. v. LEACH.
### (No. 3688.)

Court of Civil Appeals of Texas. Texarkana.
May 2, 1929.

W. H. Francis, A. S. Hardwicke, F. J. Scurlock, and J. W. Hassell, all of Dallas, and H. V. Davis, of Gilmer, for appellant.

Edwards & Hughes and R. W. Hamilton, all of Tyler, and Fairchild & Redditt, of Lufkin, for appellee.

HODGES, J. The appellee, Annie Leach, filed this suit against the Magnolia Pipe Line Company, a corporation incorporated under the laws of this state, and the Magnolia Gas Company, a corporation incorporated under the laws of Delaware, to recover damages for the destruction and desecration of the grave of her deceased daughter. She asked for $1,100 as actual damages and $850 as exemplary damages. Before the trial was concluded the Magnolia Pipe Line Company was eliminated from the suit, and the Magnolia Gas Company remained as the sole defendant.

The facts show that the appellant, in the construction of its pipe line through Upshur county, ran over a tract of land on which a graveyard was located. Among those buried there was a deceased daughter of the appellee. In digging the ditch for the pipe line that grave was blown up and destroyed. The appellant defended mainly upon the ground that the graveyard had been neglected and was so overgrown with briars and other vegetation that graves could not be discerned, and that if the grave of the appellee's daughter was destroyed, as alleged, appellant's agents and servants did not discover the grave and did not know that it was located in the line of their right of way before the ditch was constructed.

The court submitted the following special issues:

"1. Was the grave of Minnie May Hoskins (appellee's daughter) destroyed by the servants of the Magnolia Gas Company in the construction of the pipe line in question?" Answer: "Yes."

"2. Were the premises in question, through which the pipe line was constructed and at the place constructed, a cemetery?" Answer: "Yes."

"3. Did the servants of the Magnolia Gas Company engaged in the construction of the pipe line know that the premises in question and through which the line ran was a cemetery, at the time they constructed said line?" Answer: "Yes."

"4. Was it negligence, as the term 'negligence' has hereinbefore been defined, on the part of said defendant's servants, in the construction of its pipe line, to construct same through the premises in question?" Answer: "Yes."

The jury further found that such negligence was the proximate cause of the destruction of the grave, and assessed appellee's damages at $1,000.

The only complaint of the court's

charge presented in this appeal is an objection to interrogatory 4, "because it did not restrict the negligence to any particular time and because it should be restricted to a time before the ditch had been constructed." There was no affirmative error in propounding that interrogatory. If it was not sufficiently specific, the omission might have ben supplied by an additional question; but none was requested. Moreover, we do not think the question as propounded was subject to the objection made. It is not likely that the jury would find appellant's agents and servants negligent in disturbing the grave upon knowledge acquired by them after the destruction had occurred.

■ Complaint is made of the following language used by counsel for the plaintiff in his closing argument: "Gentlemen of the Jury, I have heard in my practice in the courthouse many glaring misquotations of the evidence, but never in all my practice have I heard a misquotation as glaring as that of the attorneys for this Delaware corporation." The principal objections to that language are: (1) That there was no proof that the appellant was a Delaware corporation, and (2) that the argument was an appeal to sectional feeling and was calculated to arouse the passion and prejudice of the jury against the appellant. That the appellant was a Delaware corporation was apparent from the pleadings in the case. That fact had been alleged by the plaintiff in her petition, and presumably the jury had that petition in their possession during their deliberations. There is nothing apparent in the language used to warrant the inference that it inflamed the minds of the jurors and caused the rendi-

tion of an excessive verdict. The trial judge had an opportunity to hear the arguments made by the opposing counsel, and was in a position to determine the effect of the language complained of upon the minds of the jurors. We cannot say that he abused his discretion in refusing to give a special charge instructing the jury not to consider for any purpose the argument of plaintiff's counsel that he had seen "no more glaring misquotation of evidence than that of the attorneys for this Delaware corporation." Certainly all of the language requested to be excluded was not subject to objection. The court was not required to give a charge which asked for more than appellant was entitled to have. The assignment is overruled.

■ During the progress of the trial the appellant offered in evidence what appeared to be a grant of a right of way across the land on which the graveyard was located, executed by one J. D. White purporting to act as "guardian for the D. W. Glenn estate." The instrument was admitted over the objection of the appellee, but later was excluded by the court upon the ground, as stated in the bill of exception, that he did not regard the issue of exemplary damages as sufficiently raised by the evidence and would not submit that issue to the jury. The appellant assigns error to that ruling of the court. The assignment is overruled. The lease does not disclose any particular line across the tract of land designated; and, even if it did, that would not have authorized the appellant to dig a ditch through the graveyard and desecrate the graves of those buried there. We cannot say that the finding of the jury is excessive.

The judgment is affirmed.