## WOODWARD & HARDIE, Inc., v. McMILLAN et ux.

### No. 7531.

Court of Civil Appeals of Texas. Austin.
Dec. 10, 1930.

Rehearing Denied Jan. 7, 1931.

C. K. Quin and Edwin G. Black, both of San Antonio, for appellant.

C. F. Richards, of Lockhart, and Woodward, Hart, Gay & Hart, of Austin, for appellees.

BLAIR, J.

Appellees sued appellant for damages resulting from a breach of its contract to build a house for them, the damages prayed for being the difference between the contract price, $2,910, and $4,000, the price for which appellees alleged that the house could be built. Appellant filed a general denial and the special defenses that it was induced to enter into the alleged contract by the fraudulent representations of appellee Will McMillan as to his financial worth, and that the house could be built for the price stipulated in the

contract, and therefore appellees sustained no damages. Upon the jury's answers to the special issues submitted, judgment was rendered for appellees against appellant for $840, being the difference between the contract price and the price which the jury found that appellees could have secured a reliable contractor to build "the five-room house according to the plans and specifications introduced in evidence"; hence this appeal.

■ In answer to special issue No. 4, requested by appellant, the jury found that appellant "executed a contract to build a house for plaintiffs in Lockhart, Texas"; in answer to special issue No. 1, the jury found that appellant did not sign the contract sued upon, believing that it was signing a contract to build a four-room house; and in answer to special issue No. 3, the jury found that for $3,750, payable $34.95 per month (as provided in the contract), the appellees could "secure a reliable contractor to build the five-room house according to the plans and specifications introduced in evidence, in Lockhart, Texas." By several propositions, appellant contends: (a) That by these findings the jury did not find that it had contracted to build a house of any particular number of rooms, or of any particular size, and that the court assumed that the contract was for a five-room house; and (b) that these findings of the jury are not supported by any evidence and that the judgment based upon such issues and findings constitutes fundamental error. Neither of the contentions is sustained. The appellant requested the submission of special issue No. 4, in answer to which the jury found that appellant "executed a contract to build a house for plaintiffs in Lockhart, Texas." The law is well settled that where a party requests the submission of a special issue on the trial of a case, he is estopped on appeal to assert that there was no legal evidence to support the issue, or to question the legal sufficiency of the issue requested. National Life & Accident Ins. Co. v. Bunton (Tex. Civ. App.) 10 S.W.(2d) 733; Independent Shope Brick Co. v. Dugger, 285 S. W. 599, in which case the Commission of Appeals held that:

"While a party, having requested the submission of a special issue to a jury, might complain that the jury's answer was against the great weight of the testimony (a question not before us in this case and which we do not decide), it seems perfectly clear, under our decisions, that he is estopped to claim there is no evidence in the record raising that issue. This is the uniform holding of our Supreme Court and the various Courts of Civil Appeals. The reason for the rule is apparent."

■ The finding of the jury on issue 4 alone is a sufficient finding under the preceding rule of law to establish that appellant executed the contract sued upon by appellee to build a five-room house for them in Lockhart, Tex. But certainly when the findings on the three preceding issues are construed in the light of the pleadings and evidence, they are sufficient and amount to a finding that appellant executed a contract with appellees to build for them a five-room house in Lockhart, Tex., and the court did not assume either in submitting these issues to the jury or in rendering judgment on the jury's findings that such was the contract between the parties, although it could have done so under the undisputed evidence.

The evidence is undisputed that appellant contracted with appellees to build for them a five-room house in Lockhart, Tex., for $2,910. The negotiations were begun by appellees signing a written order for the house, which was also signed by Thacker, agent for appellant. The order called for a house according to plan No. 752, which was a plan for a four-room house. This was later changed by adding a glazed-in porch, thereby making a five-room house, and the specifications which called for a five-room house were signed by both parties. A mechanic's lien contract was executed by both parties. Appellees executed a note and deed of trust to appellant in payment of the improvements. D. J. Woodward, appellant's president, testified as follows:

"I have seen the blue print before, which you now show me. I have also seen these plans and specifications; this is my signature attached to these plans and specifications. I signed that as president of the company; it is dated June 26, 1929. * * * They got these plans and specifications from us. They were delivered, signed by us. They call for a five-room house, but what I am telling you is that our price of $2,910.00 was made by me on the assumption that it was a duplicate of a house that they had just finished, and that they had just gone through with, and I signed a duplicate of this house. * * * She had stated to our representative that was selling her the house that she wanted some changes made in it, and our representative took it up and had the changes made on the drafting board. Mrs. McMillan got a copy back, which is this copy here, with the changes made on it, and I signed the specifications on this. I truly signed them, there is no argument about it. I did not sign the blue-print; I signed the specifications, and felt like those specifications were of the house that they had just walked through, the four-room house. * * * That four-room house is not what I signed in these specifications. I signed the five-room house. They signed the five-room house, and that is the house for which I wanted the extra thousand dollars."

The plans were not signed by appellant, but the specifications which were signed by both parties provided as follows:

"It is understood that the accompanying blue prints are intended as a supplement to and a part of the foregoing specifications, and as such, are to be followed in every particular as shown thereon. Said blue prints are to be OK'd by owner before actual construction has begun."

Mrs. McMillan O. K.'d the plans, and both she and her husband testified that in doing so she was acting for both of them, and that, in fact, she acted as agent for the husband in handling all the transactions with appellant, who prepared all papers in the premises and submitted them for appellees' signatures.

■ In the case of Burleson v. Graves, 255 S. W. 1013, 1014, this court held as follows:

"It has been repeatedly held that the wife may act as the agent of the husband, and that such agency may arise from the conduct of the parties as well as by express authority. Crutcher v. Sligar (Tex. Civ. App.) 224 S. W. 227; Parrott v. Peacock Military College (Tex. Civ. App.) 180 S. W. 132; Lilly v. Yeary (Tex. Civ. App.) 152 S. W. 823; Lumber Co. v. Smith (Tex. Civ. App.) 151 S. W. 605. * * *"

■ Nor is it necessary for the wife to sign her name as agent for the husband, if, in fact, she acted as his agent. Parrott v. Peacock Military College, supra.

■ With respect to the defense of mistake, the evidence of the appellant's president, above quoted, clearly sustains the jury's finding that he did not sign the contract or specifications for a five-room house, believing that he was signing specifications for a four-room house. Nor was such defense of mistake a legal defense to the contract or suit. A mistake of one party to a building contract not induced by the other, such as mistake of the contractor in figuring the amount of his bid, or a mistake as to what plans are to be followed, will not invalidate the contract nor entitle the mistaken party to any relief. State v. Scholz Bros. (Tex. Civ. App.) 4 S.W.(2d) 661; Brown v. Levy, 29 Tex. Civ. App. 389, 69 S. W. 255; Webb County v. Hasie, 52 Tex. Civ. App. 16, 113 S. W. 188; 7 Tex. Jur. 540, § 3. And since appellant was not induced by any act of appellees to sign the specifications, it cannot now assert that mistake which resulted from its own failure to examine the specifications which it prepared. National Union Fire Ins. Co. v. Peck (Tex. Civ. App.) 296 S. W. 338.

■ The evidence also sufficiently sustains the finding of the jury, in answer to special issue No. 2, that the appellant was not induced to enter into the contract with appellees by any false representations made by appellee, Will McMillan, as to his financial worth. The complaint here is that Will McMillan represented that he was worth $16,000 in stocks or cash in a statement which was signed by him and D. J. Woodward authoriz-ing Guaranty Mortgage Company to procure a loan on the house. This statement contained a detailed description of the house, and purported answers to several questions by Will McMillan. McMillan admitted signing the statement and that he answered several questions propounded to him by Woodward, but that he did not give any information as to his financial worth. It is also undisputed that there are several inaccuracies in other purported answers of Will McMillan, such as (a) that he was the son-in-law of A. A. Storey, when as a matter of fact he was the son-in-law of J. T. Storey; (b) the name of the store at which he was employed was given as J. T. & A. A. Storey Mercantile Company, when it was simply J. T. & A. A. Storey; (c) A. A. Storey was said to be president of the Lockhart National Bank, whereas J. T. Storey held that position; (d) A. A. Storey was said to be owner of the mercantile business, whereas he was only part owner; and (e) Will McMillan's address was given as "S. Commerce St., Lockhart, Texas," whereas he lived on San Antonio, where Woodward had visited him in connection with this building contract. It is not probable that McMillan was present and gave the above misinformation to Woodward, and the jury could have concluded that Woodward obtained his information elsewhere. McMillan testified that he did not inform Woodward that he was worth $16,000; and that some of the blanks in the statement were not filled in when he signed it. Woodward testified to the contrary. Woodward was interested in getting the best financial rating of McMillan possible, because it afforded a better sale, of his notes, which appellant was taking in payment of the house, and the statement in question was taken for that purpose. After discovering that the plans and specifications called for a five-room instead of a four-room house, Woodward tried to persuade Mrs. McMillan to let appellant out of the contract, and he told her the contract price was too low by about $1,000 or $1,200. She refused to release appellant from its contract. Woodward then returned from Lockhart, where he had sought a release of the contract because the price was too low, to San Antonio, and wrote Mrs. McMillan a letter, telling her that appellant could not carry out the contract because the title to her property was "bad." Woodward in effect admitted that this was a mere subterfuge to get out of the contract. Nor does it appear that appellant mentioned in any conversation or letter that it was seeking a release of the contract because of any false representations as to Will McMillan's financial worth. From these facts and circumstances we conclude that the jury's finding that Will McMillan did not make any statement as to his financial worth which induced appellant to make the contract is supported by sufficient evidence.

■ Nor do we sustain appellant's contention that there was no legal evidence to sup-

port the jury's finding in answer to special issue No. 3 that appellees could secure a reliable contractor to build the house for $3,750. Woodward told Mrs. McMillan when he was seeking a release from the contract that it would cost from $1,000 to $1,200 more than the contract price to build the five-room house called for in the specifications. W. D. Evans testified that he was a building contractor and that he would build the house called for in the plans and specifications for $3,675, plus 10 per cent. for carrying the loan, payable at $35 per month, which would make a total of $4,042. Other contractors testified to lower figures for building the house. The issue was therefore for the jury.

Nor do we sustain appellant's contention that the trial court committed reversible error in submitting the issue of damages in special issue No. 3, as follows:

"For what sum, payable $34.95 per month, could the plaintiffs have secured a reliable contractor to build the five-room house according to the plans and specifications introduced in evidence, in Lockhart, Texas? You will answer this by stating the amount in dollars."

The only objection appellant made to this issue was "that plaintiff's measure of damages, if any, is the difference between the contract price and the reasonable price at which they can procure the building of said house." Appellant did not object to the issue on the ground that it should submit the "lowest price," and it cannot raise that issue on appeal. Port City Lumber Co. v. Markell (Tex. Civ. App.) 9 S.W.(2d) 449. Nor does the charge constitute reversible error because it did not use the word "reasonable" in connection with the price for which appellees could procure the erection of the house. It is clear that the jury understood that the price to be found was the reasonable price for which appellees could procure a reliable contractor to build the house. The testimony adduced on the issue was based upon the reasonableness of price, and witnesses testified to both larger and smaller prices for the house than that allowed by the jury.

We find no error requiring a reversal of the cause, and the judgment of the trial court is affirmed.

Affirmed.