## DAMON v. STATE.

### No. 7596.

Court of Civil Appeals of Texas. Austin.
March 18, 1931.

Rehearing Denied April 8, 1931.

Holland & Holland and George C. Gaines, Jr., all of Houston, for appellant.

R. L. Bobbitt, Atty. Gen., W. N. Arnold, Jr., and Sloan Blair, and T. S. Christopher, Asst. Attys. Gen., and Geo. P. Willis, of El Campo, for the State.

McCLENDON, C. J.

Appeal from a judgment of the county court in condemnation proceedings awarding the state a right of way for road purposes across the farm of appellant.

The sole ground upon which the appeal is based is the contention by appellant that the undisputed evidence shows that a portion of the land embraced in the condemnation proceedings was a cemetery and was therefore dedicated to a public use and not subject to condemnation.

The controlling facts follow: The land in suit is a strip 100 feet wide across the south side of appellant's property. The statutory requirements leading up to the condemnation proceedings were complied with and an agreement with appellant upon the value of the land could not be reached. Whereupon commissioners were appointed who assessed the value. Appellant was not satisfied with the assessment, and appealed to the county court, where for the first time he raised the issue that a portion of the property constituted a cemetery. This issue he raised by cross-action, in which he sought to enjoin the proceeding. The record shows that at the request of appellant his cross-action was taken up in the nature of an exception, a hearing had thereon before the court, at which appellant and several other witnesses testified, and the court denied the prayer for injunction. Thereafter the cause was tried on its merits before a jury and, as the judgment recites, "the matters in controversy were submitted to the said jury by the court at the request and by agreement of counsel in five special issues, as follows." The first of these issues was whether any part of the land sought to be condemned was "now used for cemetery purposes," which the jury answered in the negative. Just why the prayer for injunction was heard before the court without a jury and thereafter the cemetery question was submitted as a fact issue to the jury, the record does not disclose. The evidence was not altogether the same upon the injunction hearing as upon the case before the jury, only appellant testifying in his own behalf in the latter hearing upon the cemetery issue.

In so far as the trial upon the merits is concerned, appellant is precluded from raising the issue that there was no evidence sufficient as a matter of law to support a finding in favor of the state upon the cemetery issue, because as shown from the above quotation from the judgment, that issue was submitted by the court at the request and by agreement of counsel. Hanrick v. Hanrick, 110 Tex. 59, 173 S. W. 211, 214 S. W. 321; Independent Shope Brick Co. v. Dugger (Tex. Com. App.) 285 S. W. 599; National Life & Accident Ins. Co. v. Bunton (Tex. Civ. App.) 10 S.W.(2d) 733; Woodward v. McMillan (Tex. Civ. App.) 34 S.W.(2d) 357.

Independently of this holding, we hold the evidence sufficient to support a finding that whatever may have been the character of use of the property for cemetery purposes at one time, that use had been abandoned by appellant by dedicating the property to an inconsistent use, and therefore, in so far as he is concerned, that issue cannot now be raised.

The testimony of appellant in this regard was in substance that prior to his purchase of the farm, which occurred some 23 years before the trial, the county had owned it and had used a portion of it, including a part of the strip in question, as a cemetery to bury paupers and convicts. There were about 23 graves at the time of appellant's purchase. Subsequently thereto appellant had permitted as many as three persons to be buried near the old graves without making any charge; just when these burials took place or the

location of the graves was not shown. The testimony of three other witnesses upon the injunction hearing corroborated appellant as to the burials by the county prior to appellant's ownership. The following additional quotations are taken from appellant's testimony:

"The land is used for pasturage for horses, cattle and hogs. The land used for graves is not fenced off from the balance of the property." "The land, upon which the graves have been located, has been set aside by me as land used for burial purposes; although there has been no setting aside or separating in any manner the land upon which the graves are located from the remainder of the tract. I do not know of any dedication of any part of my land for cemetery purposes, and I know of no plat or formal setting aside of any portion of this land ever having been made by any person." "I do not sell burial privileges to anyone and this is not a public cemetery in which lots are for sale; but I have in the past and I will in the future permit any poor person who cannot buy a cemetery lot to inter the remains of their dead on my land. No one has a right to enter upon any portion of my land without my consent. There has been no reservation of any right upon the part of any person or for the benefit of any person that I know of in the deeds under which I hold title."

A number of witnesses testified that they had known the land for many years and never heard of any part of it being used for cemetery or burial purposes. Some of these witnesses had been over the proposed right of way recently and failed to find any evidence of any cemetery or even of a single grave.

From the foregoing testimony we think the conclusion was fairly warranted, if not irresistible, that appellant at the time of the trial and for many years prior thereto had not only not recognized any dedication of the property for cemetery purposes, but had repudiated whatever dedication there had been by a use wholly inconsistent with the sacred purposes of sepulture. Appellant contends that once property is dedicated to cemetery uses, it so remains so long as it contains the remains of the dead. There are some expressions in the authorities from which such rule might be inferred. See Barker v. Oil Co. (Tex. Civ. App.) 219 S. W. 874; Peterson v. Stolz (Tex. Civ. App.) 269 S. W. 113; Magnolia P. L. Co. v. Leach (Tex. Civ. App.) 17 S.W.(2d) 471; 9 Tex. Jur. pp. 12 et seq. This language, however, is either too broad or is subject to limitations. The correct rule, we think, is embraced in the following quotation from the Missouri case of Campbell v. Kansas City, 102 Mo. 326, 13 S. W. 897, 899, 10 L. R. A. 593:

"All expressions declaring an eternal and perpetual use should be accepted with qualifications which arise from the nature of the subject-matter, and from necessities of the public good. No human body committed to the earth preserves forever either identity or trace of form. No monument placed above it is proof against the corroding touch of time. In the progress of the ages, both body and monument fade away. * * * If every portion of ground which has been made a burial place for man should be devoted in perpetuity for burial uses, the most populous and cultivated districts of the world, where millions upon millions of the human race have sunk into the earth in the countless ages of the past, would have to be abandoned as a dwelling-place or means of support to the living inhabitants of the present day. The devotion of land to any particular use must be subject to the changes and vicissitudes which time may bring to it. The use of a graveyard is twofold,—for the purpose of continuous burials, and for the purpose of preserving the remains and memory of those who have been buried. The original uses can be continued only by the public continuing to bury, or by continuing to protect the remains already buried, and to preserve the identity and memory of the persons who have left them. * * * The public may cease to bury in the dedicated ground whenever it pleases. It may also refuse or neglect to either erect or preserve any monuments to indicate the identity of those already buried, or to give and continue to the place the character and name of a grave-yard. When this happens the original use terminates, and the fee vests in the original donors, or their legal representatives, free from it."

The above evidence we think sufficient basis for the conclusion that appellant by his own acts of neglect and adverse user of the property for his own purposes had permitted all of the physical distinguishing marks and characteristics of the property as a place of sepulture to be obliterated, and in so far as he could do so by his own acts had worked an abandonment of that use. We conclude therefore that he is not in position to assert a former use to which the property may have been dedicated as a defense to the state's asserted right of condemnation.

The trial court's judgment is affirmed.

Affirmed.