## DAMON v. STATE.
### No. 1572—5999.

Commission of Appeals of Texas, Section A. July 19, 1932.

George C. Gaines, Jr., William M. Holland, and Holland & Holland, all of Houston, for plaintiff in error.

James V. Allred, Atty. Gen., T. S. Christopher, Asst. Atty. Gen., and G. P. Willis, of El Campo, for the State.

CRITZ, J.

This is a road condemnation proceeding. The land sought to be condemned is a strip of land 100 feet wide across the south end of Damon's tract of 302 acres in Wharton county, Tex. The case was tried before a jury in the county court, where the verdict and judgment were for the state. Damon appealed to the Court of Civil Appeals for the Third District at Austin, which court affirmed the county court's judgment. 37 S.W. (2d) 405. Damon brings error.

The record in this case shows that all statutory requirements were met in this proceeding, and but one issue is here involved. Such issue is whether the facts show as a matter of law that the strip of land sought to be condemned is a cemetery. The plaintiff in error, in substance, alleges in his application for the writ of error that twenty-eight graves, some of which, clearly designated by headboards and footboards, are located on the land sought to be condemned. If the above allegation is supported by the record, for the purpose of disposing of this litigation, we will treat the land here sought to be condemned as a cemetery.

The case was tried in the county court with a jury, and the issue as to whether the land was a cemetery was submitted to such jury by an appropriate question, satisfactory to Damon, and, by the jury, found not to be a cemetery. Since the jury has found that the land here sought to be condemned is not a cemetery its verdict should not be disturbed unless the record shows as a matter of law that it is. We shall now proceed to determine that question.

It seems from the record before us that many years ago Damon purchased a tract of 302 acres of land from Wharton county, Tex. During the time the county owned the 302-acre tract, it used a small part thereof as a place to bury county paupers, and perhaps others were allowed to be buried on such part. It also seems that since Damon has owned the 302-acre tract he has allowed three persons to be buried thereon. On the other hand, it is conclusively shown that the land where all graves are located has been turned by Damon into a pasture, and long so used by him. Cattle, horses, and hogs roam at will over the land, including the graves of the departed.

On the issue as to whether there are any graves on the particular land sought to be condemned, the evidence is, to say the least, conflicting.

Damon testified, in substance, that there were at least twenty-five graves on the 302-acre tract when he bought it, and that he had permitted at least three people to be buried thereon since he owned it. He does not say when these burials occurred, or whether or not they were buried on the 100-foot strip sought to be condemned. Damon does testify, however, that there are graves located on this strip. His testimony is that there are ten or more such graves.

Frank Faulkner, a negro, and a witness for Damon, gave his age at 64 years, and testified that he had known the land many years and knew that ten or more people had been buried in the years past on the strip sought to be condemned. He does not attempt to further identify the places of such burials.

Prince Brown, a negro, testified for Damon that he was 98 years old, and that he had lived in that country all his life and knew that there were at least ten graves on the land sought to be condemned. He too does not attempt to further identify the places of burial.

J. C. Armstrong, a witness for the state, testified that he had known the land in question well for many years; that it is located a few miles from town; and that he had never heard of it being used as a cemetery.

Gird Peterson, a witness for the state, testified that he was a county commissioner of Wharton county, and had lived many years therein. He further testified that he was well acquainted with the land in question here, and that no part of the same was be-

370

ing used for cemetery purposes, and that the part of the land sought to be condemned was then being used for "horse, cow and cattle pasturage." This witness then further testified that he had gone over the land sought to be condemned from one end to the other and had found no sign or evidence whatever that any part of it was a cemetery. He further testified that there was no evidence or sign of any grave on any part of the land sought to be condemned as a highway.

We think the above testimony, when viewed in its most favorable light in favor of Damon, presents nothing more than a fact issue for the jury. This is true from two standpoints:

 First. We think the evidence is conflicting as to whether the land has ever contained a single grave. Of course the evidence given by Damon's witnesses would support a fact finding that some ten people had, at some time, been buried on this land. On the other hand, the testimony of the witnesses for the state circumstantially contradict Damon's witnesses. The sufficiency of the state's evidence to contradict that of Damon was for the Court of Civil Appeals. That court has held it sufficient, and its holding should not be disturbed.

Second. The evidence is ample to support a finding that, if this land was ever used as a cemetery, or burial place for the dead, it has long since ceased to be so used, and has been abandoned as such. The evidence is also ample to show that, if any bodies were ever buried on this land, their graves have been obliterated by the lapse of time, and abandoned by the living, and that such graves cannot now even be located or identified. The land in question is nothing but a pasture, where stock roam at will, and any graves that may have been located thereon in the years gone by have lost their identity as such. No person can now even locate them. Certainly such evidence cannot be held to show a cemetery as a matter of law.

A cemetery is a place set apart, either by municipal authority or private enterprise, for the burial of the dead. The term includes not only lots for depositing the bodies of the dead, but also avenues and walks and grounds for shrubbery and ornamental purposes. 5 R. C. L. p. 234.

We think no particular instrument or ceremony is required to dedicate a tract of land to cemetery purposes. Its actual use as such is sufficient. It is also our opinion that, when a tract of land is once dedicated as a cemetery, either by formal instrument or use only, the mere fact that the living may cease, after a time, to deposit additional bodies thereon would not rob it of its nature as a cemetery, nor deprive the living of the right to protect the graves of the dead from obliteration or desecration.

While we hold to the above views, we think it would be going entirely too far for any court to hold that this plaintiff in error, who is claiming the absolute fee to this land, who has for many years used it as an ordinary pasture for cattle, horses, and hogs to roam over, and feed on, who has no interest in the dead other than that of the public in general, and who only asserted cemetery defense herein after he and the county were unable to agree on a price, could defeat the condemnation of this land for a public purpose just because at some time in the distant past a few dead bodies have been buried thereon, but whose graves have been abandoned and forgotten by the living, and are now so entirely obliterated that no person can find or identify them.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

The judgments of the county court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.