## MICHELS v. CROUCH.

No. 1818.

Court of Civil Appeals of Texas. Eastland.

June 29, 1938.

Rehearing Denied Dec. 9, 1938.

212

D. J. Brookreson, of Benjamin, M. F. Billingsley, of Munday, and Leslie Humphrey, of Wichita Falls, for appellant.

J. S. Kendall, of Munday, and Gaynor Kendall, of Austin, for appellee.

GRISSOM, Justice.

Lige Crouch sued Henry M. Michels for damages alleged to have been caused by the desecration of the graves of his children. Plaintiff's petition contained allegations that his two children were buried in a public cemetery known as the "old Goree Cemetery." Plaintiff's petition further contained allegations describing the place of burial of his children, alleging that the spot for more than thirty years had been segregated from other lands by substantial fences and the graves therein marked, and that the place described had, for such length of time, been recognized and cared for as the last resting place of departed members of plaintiff's family, and other citizens of the community, and sufficiently alleged facts showing the designation of the spot and its continued existence as a cemetery. Plaintiff further alleged: "That although said

cemetery, graveyard and burial ground was segregated, designated and set apart from surrounding lands the defendant on or about the 15th day of January, 1937, unlawfully entered into and upon said sacred enclosure and burial place and unlawfully, wrongfully, wickedly, wantonly and maliciously and with a heart bent on mischief and in total disregard of either legal or moral duty to his fellowman or to society, broke, tore down and removed the fences surrounding the said cemetery, graveyard and burial ground and caused the fences around the same to be torn down and removed and thereby permitted and allowed a large number of cattle which defendant was then pasturing for other persons for hire, to graze in and upon and over the graves of the departed children of this plaintiff and other persons who were buried in said cemetery and burial ground and to trample upon, obliterate and destroy the markings of the last resting places of the loved ones of these plaintiffs *and said defendant further wrongfully, illegally, wickedly, wantonly, and maliciously caused his agents and employees to plow into, over and across the said cemetery, graveyard and burial ground and into, over and across the graves of the departed loved* [*ones*] *of these plaintiffs in total disregard of the rights of these plaintiffs and thereby caused these plaintiffs to suffer great and agonizing mental pain and anguish,* all to plaintiff's damage in the sum of Twenty Five Thousand Dollars for which plaintiffs sue herein." (Italics ours.)

In support of plaintiff's claim for exemplary damages, he alleged that the acts mentioned in the paragraph quoted from his petition were done by the defendant "maliciously, wrongfully, wickedly and with total disregard to the rights of plaintiff" whereby he suffered further damages in the sum of $50,000 "as exemplary damages * * *." (We here call attention to the fact that the allegations in plaintiff's petition that as a result of defendant tearing down the cemetery fence a large number of cattle defendant was pasturing for hire were permitted to graze over, trample upon and obliterate the markings of the graves of his two children, find no support in the evidence.)

We think it evident that the allegations in plaintiff's petition show the suit to be one for willful trespass, for which plaintiff claims damages (1) for mental anguish, and (2) exemplary damages. The petition contains no allegation of actual damage, other than for mental anguish, and is not a suit for damages based on negligence.

In answer to special issues submitted to it the jury found, in substance: "(1) That Henry J. Michels plowed across the unmarked grave of plaintiff's child. (2) That in doing so, he was the agent, servant, or employee of the defendant and acting within the scope or apparent scope of his authority. (3) That said act was the willful act of Henry J. Michels. (4) That Henry J. Michels struck the tombstone of the grave of the plaintiff's child. (5) That in doing so he was acting within the scope or apparent scope of his authority as agent, servant, or employee of the defendant. (6) That the above act was negligence. (7) That the above negligent act was the proximate cause of the injury to the tombstone. (8) That Henry M. Michels tore down the fence enclosing the cemetery. (9) That the taking down of the fence was negligence. (10) That the negligence in taking down the fence was the proximate cause of the injury to the tombstone. (11) That the negligence in taking down the fence was the proximate cause of the injury to the unmarked grave. (12) That ten dollars would reasonably compensate Lige Crouch for the injury to the tombstone. (13) That $5,000 would reasonably compensate Lige Crouch for the damages caused by plowing over the unmarked grave, as a direct result of the willful act of Henry M. Michels, his agents, servants, or employees, including mental pain and anguish. (14) That the agents, servants, or employees of the defendant were guilty of gross negligence in injuring the tombstone. (15) That Henry M. Michels, the defendant, was guilty of gross negligence in tearing down and removing all or any portion of the fence. (16) That $2,500 should be allowed as exemplary damages for the gross negligence and willful acts of the defendant."

Judgment was entered for plaintiff for $7,510 and defendant appealed.

■ In support of our conclusion that plaintiff's petition discloses an action for a willful trespass, but is insufficient to authorize recovery for damages resulting from defendant's negligence we call attention to the following authorities: "For the purpose of determining the relationship of the subject in hand to other branches of the law, it may be observed at the outset that 'negligence' cases are those which involve liability for injury to person or property, the injury not having been the consequence of conduct

which was premeditated, or accompanied by the intention or volition of the actor. If the injury or damage is shown to have been the * * * intended result of the wrongdoer's act, the legal situation is described in the terminology of the common law by the words 'assault,' 'defamation', 'nuisance', 'trespass', and many others." 30 Tex.Jur. 647. Also see 30 Tex.Jur. 668, 721; 41 Tex.Jur. 414; Gulf States Utilities Co. v. Mitchell, Tex.Civ.App., 104 S.W.2d 652; Horton & Horton v. House, Tex.Com.App., 29 S.W.2d 984.

Trespass is a willful or intentional wrong, and liability therefor is not dependent upon negligence. Where the suit is for damages resulting from a willful trespass only, it is erroneous to submit to the jury the question of a defendant's negligence. A judgment based on findings of negligence is not supported by mere allegations of a willful trespass. 41 Tex.Jur. 415; Steger v. Barrett, 58 Tex.Civ.App. 331, 124 S.W. 174, error refused; Carter v. Haynes, Tex.Civ.App., 269 S.W. 216, 219; Wetzel v. Satterwhite, 59 Tex.Civ.App. 1, 125 S. W. 93; Badu v. Satterwhite, Tex.Civ.App., 125 S.W. 929, 931; 1 Restatement, Torts, 361.

It is fundamental that a plaintiff must recover, if at all, upon the cause of action alleged. Gammage v. Alexander, 14 Tex. 414, 419; Krohn v. Heyn, 77 Tex. 319, 320, 14 S.W. 130; Moore v. Kennedy, 81 Tex. 144, 147, 16 S.W. 740; McGreal v. Wilson, 9 Tex. 426, 429; Brewton v. Butler, Tex.Civ.App., 12 S.W.2d 228. The case, at least in so far as it was submitted to the jury on the issues of negligence and the judgment based on findings of negligence, was tried upon a wrong theory, and must be reversed. Galveston, H. & S. A. Ry. Co. v. Hennegan, 33 Tex.Civ.App. 314, 76 S.W. 452; Shary v. Helmick, Tex.Civ.App., 90 S.W.2d 302; Dominguez v. Garcia, Tex. Com.App., 53 S.W.2d 459. Plaintiff, of course, recognizes the rules that a plaintiff must recover on the cause of action alleged, and that the allegations and proof must correspond, but contends that his pleadings are sufficient to state a cause of action for either negligence or willful trespass. We think that neither the legal conclusion that defendant was negligent in the matters complained of, or that his negligence was the proximate cause of plaintiff's injury, nor facts from which such conclusions may reasonably be drawn are contained in the petition. Gulf States Utilities Co. v. Mitchell,

Tex.Civ.App., 104 S.W.2d 652, 656; Van Velzer v. Houston Land & Trust Co., Tex. Civ.App., 16 S.W.2d 865, 866; 30 Tex.Jur. 721; City of Austin v. Schlegel, Tex.Com. App., 257 S.W. 238, 239; Snipes v. Bomar Cotton Oil Co., 106 Tex. 181, 161 S.W. 1; Webb County v. Board of School Trustees, 95 Tex. 131, 136, 65 S.W. 878; San Antonio Street Ry. Co. v. Cailloutte, 79 Tex. 341, 15 S.W. 390.

The evidence disclosed that more than forty years prior to the trial of this case a man by the name of Dick Keys died and was buried on a hill west of Goree, Texas. The owner of the land on which he was buried offered to give 2½ acres of land out of a different portion of the tract for use as a cemetery if the relatives of the deceased would remove his remains to the designated spot. Apparently this was done. Dr. Smith, owner of the tract adjoining that designated by Mr. Parks, who gave the first 2½ acres for such purpose, donated an equal amount of land for the purpose of establishing a community burial ground. Thereafter the tract was fenced. About ten white persons were buried there, and monuments and markers erected. No white person has been buried there for many years. On one side of this cemetery negroes were buried, and continued to be buried there occasionally up to the year of the trial of this case. The evidence is sufficient to show a designation of a tract for a cemetery and its continued existence as such. The fact that the remains of the dead buried there have not been disinterred, and that tombstones still mark the places of their burial, although the grounds may not have been cared for, is sufficient alone to show that there has been no abandonment of the tract as a cemetery. Damon v. State, Tex.Com.App., 52 S.W.2d 368; Meadows v. Edwards, Tex. Civ.App., 116 S.W.2d 831; Barker v. Hazel-Fain Oil Co., Tex.Civ.App., 219 S.W. 874, 875, writ refused.

Though defendant purchased the land on which the cemetery was located, without reservation of such tract as a cemetery shown in either his deed or chain of title, nevertheless, the physical presence there of the fence, tombstones and graves, was adequate notice of the use of the spot, and, so acquiring title, defendant obtained no right to use the burial ground in any manner inconsistent with or inappropriate to the designation and use of it as a cemetery. Oakland Cemetery Co. v. People's Cemetery Ass'n, 93 Tex. 569, 57 S.W. 27,

55 L.R.A. 503; Hines **v.** State, 126 Tenn. 1, 149 S.W. 1058, 42 L.R.A.,N.S., 1138; Roundtree v. Hutchinson, 57 Wash. 414, 107 P. 345, 27 L.R.A.,N.S., 875; also, see, 11 C.J. 60; 9 Tex.Jur. 12; 8 R.C.L. 694; 10 Am.Jur. 514; 17 C.J. 1143.

Viewing the evidence, as we must, in the light most favorable to plaintiff, we find the following additional facts disclosed by the evidence: The cemetery was located on land which defendant owned in 1936. According to the testimony of defendant and his son they entered into a contract in December, 1936, for the sale of the land on which the cemetery was located by the father to the son. They testified, in effect, that the son, Henry J. Michels, took exclusive possession and control of this land about January 1, 1937, prior to the alleged desecration of the graves. This testimony is disputed only by proof of the fact that defendant removed some of the fence surrounding the cemetery in the early part of 1937, and, perhaps by inconsistencies in their testimony relative to the asserted sale. Defendant's deed conveying the land to his son was not actually delivered and the cash consideration paid, according to their testimony, until May, 1937. There is much conflict in the testimony as to the actual condition of the fence, or portion thereof, removed by the defendant. The most that can be said is that there was a fence surrounding all, or a major portion of the cemetery. That it was dilapidated; that most of it had fallen to the ground, and it was of little practical value, except to mark the boundaries of the cemetery plot. Under the facts disclosed by the entire record since the fence was insufficient to protect the cemetery from the invasion of livestock, but, if it were sufficient for such purpose, since it was not proved that livestock entered the cemetery after the removal of the fence by defendant (although the proof shows that they did prior to its removal), we think the removal of such cemetery fence under the circumstances disclosed, taken alone, would not authorize a recovery, if any, of more than nominal damages. True, the record shows that the cemetery grounds were entered and the land between the burial places of the white and negro people plowed. No connection is shown between the removal of the fence and the plowing and damage to the tombstone. It is not shown that the removal of the fence by defendant was in furtherance of a plan for the plowing; the evidence is that Henry J. Michels did not know that defendant removed the fence. It is further shown by the record that the land was plowed close to the grave of one of plaintiff's children, and there was evidence that such tombstone was struck and tilted to an angle of 45 degrees; that the unmarked grave of another of plaintiff's children, immediately south of the grave marked by the tombstone had a furrow plowed down the center of the grave. All the evidence with reference to anyone plowing in the cemetery is that it was done by Henry J. Michels, defendant's son, about 36 years of age, who says he owned the land at the time he plowed there, and had exclusive control thereof. Perhaps the circumstances are sufficient to justify the conclusion, or inference, that Henry J. Michels, while plowing in the cemetery, which act he admits, struck and damaged the tombstone, and plowed a furrow down the middle of the unmarked grave. If so, we find no evidence that at the time Henry J. Michels did such things, if he did, that he was an agent, employee or servant of Henry M. Michels, or was "caused" by Henry M. Michels to do such things. Having so concluded, after a painstaking study of the record, it naturally results that we find as to the acts proved, other than the removal of the fence, a willful trespass by defendant was not shown. The jury in answer to special issue No. 14 found that $5,000 would compensate plaintiff for mental anguish suffered by him "as a direct result of the willful act of Henry M. Michels, his agents, servants, or employees \* \* \* *for damages caused by plowing over the unmarked grave.*" (Italics ours.) The award of $5,000 was restricted solely to one act, that is, "plowing over the unmarked grave." There is no evidence that defendant plowed over the grave. The evidence shows that Henry J. Michels plowed in the cemetery. If the evidence is sufficient to justify the conclusion that defendant's son plowed over the grave, still it is insufficient to show that at such time he was acting as the servant, agent or employee of the defendant, or was "caused" by the defendant to plow over the unmarked grave. The same issue, based on defendant's negligence, was submitted to the jury by special issue No. 13. It was not answered.

Appellant contends that the judgment for $5,000 for mental anguish resulting solely from plowing a furrow across the unmarked grave is excessive. Many facts and authorities are cited by defendant lending support to that contention, notwithstanding the fact that juries are allowed much latitude in

cases of mental anguish. But, since defendant's liability for the act for which $5,000 was awarded plaintiff as compensation for mental anguish cannot, for other reasons, be sustained, we think it is unnecessary to pass upon that question.

The jury found and the judgment awarded plaintiff $2500 as exemplary damages. The reason therefor is readily apparent when defendant's testimony is read. The defendant testified:

"Q. Now, Mr. Michels, when you tore the fence down on the east side of that grave yard you didn't care who had people buried there, did you? A. Well, I didn't have anything to do with it.

"Q. With taking the fence down? A. No, with the people that is buried there.

"Q. You didn't care about the people that was buried there, did you? A. No, why should I. * * *

"Q. But you didn't care what happened to them, did you? A. No, why should I be responsible."

Because, under our view and understanding of the case, the judgment for actual damages cannot be sustained we find it necessary for that reason to reverse the judgment in so far as a recovery of exemplary damages is awarded.

The answer of the jury to special issue No. 12, fixed the amount of damage to the tombstone at $10 and found such damage to be "a direct result of the *negligence*" of defendant, his agents, servants or employees. There were no allegations of damage to a tombstone. The finding that the damage to the tombstone resulted from the negligence of defendant, his agents, servants or employees, we think, is not sustained by either pleading or proof.

Plaintiff attempted to prove a willful trespass by defendant causing actual injury and damage to plaintiff's property and mental anguish. Actual damages resulting from mental anguish may be recovered, as a separate or independent element, when caused by a willful trespass in which actual damage to plaintiff's property is sustained. But only such damages caused by mental anguish are recoverable as results directly and proximately from such trespass. 13 Tex.Jur. 231; 17 C.J. 836; 8 R.C.L. 529; 23 A.L.R. 390, note; Stein v. Greenebaum, Tex.Civ.App., 203 S.W. 809, 813; Leach v. Leach, 11 Tex.Civ.App. 699, 33 S.W. 703, writ refused; Davidson v. Lee, Tex.Civ. App., 139 S.W. 904, 907, writ refused;

Gulf, C. & S. F. Ry. Co. v. Hayter, 93 Tex. 239, 242, 54 S.W. 944, 47 L.R.A. 325, 77 Am.St.Rep. 856; Ft. Worth & N. O. Ry. Co. v. Smith, Tex.Civ.App., 25 S.W. 1032.

On the question generally see Gulf, C. & S. F. Ry. Co. v. Trott, 86 Tex. 412, 25 S.W. 419, 40.Am.St.Rep. 866; Williams v. Yoe, 19 Tex.Civ.App. 281, 46 S.W. 659; Woodard v. T. & P. Ry. Co., 126 Tex. 30, 86 S.W.2d 38; Crawford v. Doggett, 82 Tex. 139, 17 S.W. 929, 27 Am.St.Rep. 859; Cartwright v. Canode, Tex.Civ.App., 138 S.W. 792; Phoenix Furniture Co. v. McCracken, Tex. Civ.App., 3 S.W.2d 545; Magnolia Pipe Line Co. v. Leach, Tex.Civ.App., 17 S.W. 2d 471; Louisville Cemetery Ass'n v. Downs, 241 Ky. 773, 45 S.W.2d 5; Lisner v. Hughes, 49 App.D.C. 40, 258 F. 512.

For the reasons stated the judgment of the district court is reversed, but it appearing that the cause, in part, was submitted upon a wrong theory; it not appearing that the case has been fully developed; and it appearing that justice will best be served by a remand of the cause, the judgment will not be rendered. Dominguez v. Garcia, Tex.Com.App., 53 S.W.2d 459, 461; Reed v. Benjamin State Bank, Tex.Civ. App., 114 S.W.2d 365, 373.

The judgment is reversed and the cause remanded.