### JOHNSON v. HAYS FURNITURE CO.
#### No. 2924.

Court of Civil Appeals of Texas. Waco.
Oct. 26, 1950.

Rehearing Denied Nov. 22, 1950.

Allen & Allen, Hamilton, for appellant.

Joe H. Eidson, Fort Worth, Hervey E. Chesley, Hamilton, for appellee.

LESTER, Chief Justice.

The appellee sued the appellant in the justice court of Hamilton County, Texas, basing his cause of action upon a verified account for the sum of $168.94 plus $20 attorney's fees alleged to be a balance due the appellee by appellant for several mattresses, pillows and unfinished desks purchased by him or his agent, Mrs. Harry M. Johnson (wife of appellant), from the appellee. The appellant denied the account and the agency of his wife by verified plea, and further pleaded that the articles of merchandise were purchased by his wife in her own separate right for the benefit of her separate venture, with which he had no connection. Judgment was rendered for the appellee in the justice court and appellant duly appealed to the county court, where the case was tried by the court without the aid of a jury. The court rendered judgment for the appellee for the full amount sued for and the appellant has appealed.

The record does not disclose any findings of fact or conclusions of law by the trial court, or any request therefor.

Appellant's first and second points are to the effect the trial court erred in rendering judgment against him because the appellee's evidence showed that its cause of action, if any, was against his wife for equipment sold her upon a contract made directly with her for the benefit of her separate estate, for the value of which her note and chattel mortgage were given, the appellant having no connection with the transaction; that under such circumstances the community property of the husband and wife is not liable therefor.

The evidence shows that the appellant and his wife purchased a two-story building in the city of Hamilton, in which they operated a grocery store and cafe as a partnership on the ground floor. Appellant and his wife testified that Mrs. Johnson was to operate a rooming house in the upper portion as her separate enterprise; that she purchased said articles of merchandise for her separate estate. Mr. Hays, who made the sale, testified that before the sale was made he went to the premises and there talked to the appellant about the merchandise and the appellant said: "Anything that is all right with her (referring to his wife) will be all right with me"; that when he had such discussion he was of the opinion that he was making the trade with the appellant as well as with Mrs. Johnson; that the appellant did not tell him that he would not be responsible for the purchase price of said merchandise and nothing was said by appellant or Mrs. Johnson about it being for Mrs. Johnson's separate enterprise. He further testified that he had made demands upon the appellant to make payments on the amount and that he at no time denied liability; that when he made visits out to their place of business Mrs. Johnson appeared to be in charge most of the time while he was there. Mrs. Johnson testified that she did not inform Mr. Hays that she was buying the merchandise in her own separate right and that appellant would not be responsible for the indebtedness. She also testified that in connection with the grocery and cafe business she had authority to buy and pay for goods from wholesale houses and that she ran the business in the absence of her husband; that she had alone executed and signed a note to Higginbotham Lumber Company for lumber and material that was used in the

building. Appellant testified that he did not tell Mr. Hays that he would not be responsible for the indebtedness prior to the purchase, or that the articles were being purchased on behalf of his wife's separate venture; that his wife had authority to make purchases for the grocery and cafe; that he never did tell Mr. Hays or his attorney that the indebtedness was not his until the trial. He testified that he told appellee's attorney that he would try to pay the account in sixty days, but he did so to avoid unnecessary publicity; that he considered the articles of merchandise bought would become community property when fully paid for; that it was to pay for itself. The party that delivered the merchandise to the house testified that the appellant directed them where to place it and that appellant helped to unload it. The appellant made no complaint of the price or condition of the merchandise and made no offer to return it until some eight or nine months after it was delivered, and this offer was not made by the appellant but was made by Mrs. Johnson.

■ Ordinarily, the question of agency is an issue of fact to be determined from all the facts and circumstances surrounding the parties to the transaction. Such agency may arise from the conduct of the parties as well as by express authority. Daugherty v. Wiles, Tex.Com.App., 207 S. W. 900.

■ It has been held many times that there is nothing in our laws which incapacitates a wife from acting as the agent of her husband, and when authorized, her acts are as binding upon him as the authorized acts of any other person. Woodward & Hardie v. McMillan, Tex.Civ.App., 34 S.W.2d 357; Parrott v. Peacock Military College, Tex.Civ.App., 180 S.W. 132; Burleson v. Graves, Tex.Civ.App., 255 S.W. 1013; Crutcher v. Sligar, Tex.Civ.App., 224 S.W. 227; Speer's Law of Marital Rights, 3rd ed., p. 241. The fact that Mrs. Johnson executed the note and mortgage in her own name and the name of her husband nowhere appeared therein does not alter the situation if in fact she was acting as his duly authorized agent. Woodward &

Hardie v. McMillan, supra; Parrott v. Peacock Military College, supra.

■ From the foregoing facts we are of the opinion that the evidence is amply sufficient to support the court's implied finding that Mrs. Johnson was acting as the agent of the appellant with his knowledge and consent. We overrule said points.

Appellant says the court erred in allowing the recovery of attorney's fees in the sum of $20 because the evidence shows that no demand was made on the appellant for payment of the indebtedness on an account but said demand was made for payment of the balance due on a note executed by Mrs. Johnson. Mr. Hays testified concerning the demand, on direct examination, as follows:

"Q. Did you make any demands to Mr. Johnson for payment of this claim prior to the filing of this suit? A. Yes, sir. I had been out there several times to see Mr. and Mrs. Johnson, both, to see if could not pay something on it.

"Q. This suit was filed on or about November 18, 1949; had you made a demand upon Mr. Johnson thirty days prior to that? A. I had to Mrs. Johnson. Well, you mean at any time prior?

"Q. Yes. A. Yes sir."

On cross-examination he testified:

"Q. You said you made demand on him for this account 30 days prior to institution of the suit, were you demanding that note be paid, or what? A. No, just wanted some money.

"Q. Did you talk to him or Mrs. Johnson? A. Mrs. Johnson.

"Q. Do you know whether it was thirty days before the 30th of November or not? A. I am pretty sure it was.

"Q. And it was to Mrs. Johnson and not the defendant in this case? A. Talked to Mrs. Johnson. I had seen Mr. Johnson before. I talked to him before but the last person I saw was Mrs. Johnson.

"Q. Were you demanding payment on the account or full payment? A. I wanted them to catch up with past payments."

On re-direct examination he testified:

"Q. Also, Mr. Hays, after the purchase was made did you speak to Mr. Johnson about making payments on this particular account? A. I told him what the payments would be, Mr. Eidson, but that is all.

"Q. Did you ever ask him for a payment on this account? A. You mean on this note?

"Q. Yes. A. Yes sir.

"Q. What did he say? A. Well, all that was possible was done and he could not make payment.

"Q. He did not deny he owed it? A. No sir."

The record shows that suit was filed in the justice court on November 18, 1949. The appellant introduced in evidence a letter written to him, dated November 7, 1949, from appellee's attorney concerning this indebtedness as follows:

"Hamilton, Texas, November 7, 1949
"Mr. H. M. Johnson,
"Hamilton, Texas.

"Dear Mr. Johnson:

"Mr. A. C. Hays of Hays Furniture Co. has asked us to contact you in reference to 2 notes payable to Hays Furniture Co., which have been past due for some time.

"The first note is in the principal amount of $109.12, dated Sept. 7, 1948, with interest at the rate of 6% per annum, and payable in installments of $9.64 monthly. The note bears interest at the rate of 10% per annum after default of any installment. One payment of $9.64 was made in October, 1948, one of $9.64 in March, 1949, and one of $5.00 in July, 1949. This note is signed by you and C. E. Fulcher and is secured by 108 sq. yds. of linoleum and 1 virtue-craft table.

"The second note is dated March 11, 1949, in the principal amount of $185.31, with interest at the rate of 6% per annum, and payable in monthly installments. One payment of $16.37 was made on July 25, 1949. The note is now in default since the installments were not paid when due. This note is signed by Mrs. H. M. Johnson and is secured by a chattel mortgage on 5 unfinished desks, 8 mattresses, and 16 pillows.

"Mr. Hays feels that the first note listed above should be paid off now and that payments should be resumed on the second note.

"We request that you contact us within the next few days and let us know what your intentions are in regard to these notes."

"Very truly yours,
"Chesley & Eidson
"Joe H. Eidson."

■■■ We are of the opinion that the evidence leads to but one conclusion, that the appellee was making demand for payment on a note that was executed for the balance of the purchase price for said merchandise and that such demands were to the extent that payments be brought up to date, as shown by the letter of appellee's attorney dated as late as eleven days prior to the filing of the suit, in which he stated: "Mr. Hays feels that the first note listed above should be paid off now and that payments should be resumed on the second note" (which represented the indebtedness herein involved). Therefore, under such circumstances, we are of the opinion that the court erred in including attorney's fee in the sum of twenty dollars in the judgment. The note was not introduced in evidence and we are left in the dark as to its provisions, except that it evidently bore interest at the rate of six per cent; but the evidence shows without dispute that a note was executed in the sum of $185.31 for the balance of the purchase price of the articles of merchandise and appellee based his suit upon a verified account. But as we understand appellant's brief, he is only contesting the question of agency on the part of Mrs. Johnson and the right of appellee to recover attorney's fees under Article 2226, Vernon's Ann.Civ.Stats., and he specifically states that "We base this appeal on Article 4621 of the Revised Civil Statutes, and the comment in Texas Jurisprudence, Vol. 23, Sec. 157, page 185, dealing with debts contracted by the wife, as to Points one and two. And as to Points Three and Four, we think Art. 2226, Acts 51st Legislature, Page 915, should be decisive." Under such state of facts, and being of the opinion that

the evidence is sufficient to support the implied findings of the trial court that Mrs. Johnson was an agent of her husband in this transaction, and the amount of said judgment not being questioned as being excessive, except as to the sum of twenty dollars allowed as attorney's fee, we therefore reform the judgment by eliminating the twenty dollars so allowed and affirm it in the sum of $168.94.

Judgment reformed and affirmed.

TIREY, J., took no part in the consideration and disposition of this appeal.